477 So.2d 624 (1985)
TAMPA ELECTRIC COMPANY, Appellant,
v.
Chester BRADSHAW, Appellee.
No. AY-228.
District Court of Appeal of Florida, First District.
September 24, 1985.
Rehearing Denied November 14, 1985.
*625 Charles E. Bentley of Holland & Knight, Lakeland, for appellant.
Susan W. Fox of McFarlane, Ferguson, Allison & Kelly, Tampa, and William D. Douglas, Tampa, for appellee.
ERVIN, Judge.
In this workers' compensation case, the employer appeals the deputy's order, finding that claimant's average weekly wage (AWW) includes a retroactive pay increase and earnings from his concurrent employment, and awarding wage loss benefits. We affirm.
In 1979, claimant was employed as a ground equipment operator for employer. As such, he was required to use hand tools, climb ladders and equipment, and lift heavy items. On July 14, 1981, and August 12, 1981, he suffered compensable, work-related injuries to his right knee, and received medical treatment, including arthroscopic surgery in August 1981 on his right knee to repair a medial meniscus tear. Despite post-operative therapy, his knee continued to swell and cause pain. In February 1982, another orthopedic surgeon performed a second arthroscopic surgery on the knee. Although the second surgery was apparently more successful than the first, claimant still complained of pain and swelling in the knee while lifting heavy loads or climbing. The doctor who performed the last surgery assessed the likelihood of total recovery as "slim" and assigned a fifteen percent impairment rating to the body as a whole. He also placed restrictions on claimant's working at heights, or climbing poles or ladders.
At all relevant times, claimant was a member of the International Brotherhood of Electrical Workers (IBEW), Local 108. Local 108 had a collective bargaining agreement with the employer which expired on March 31, 1981. From that date until a new contract was ratified on October 19, 1981, the parties continued under the terms of the expired contract. The new contract, which included a pay-rate increase for claimant, was made retroactive to April 1, 1981. For the thirteen weeks before the date of claimant's first accident, occurring on July 14, 1981, he did not know what his pay-rate would be under the new contract. The evidence before the deputy, however, revealed that for the past 30 years all contracts between the employer and the IBEW have made pay increases retroactive to the expiration date of the prior contracts.
At the time of his accidents, claimant was also employed as a part-time welding instructor at Pasco-Hernando Community College (PHCC). The welding classes consisted of classwork, lab work and field trips. PHCC furnished the classroom, lab, textual materials, instruction sheets and equipment. Claimant was not required to provide any tools, but he sometimes brought in tools for specialized work. PHCC told claimant when to teach the class, usually from 7:00 to 10:00 p.m., and paid claimant only for those hours. The provost of PHCC observed claimant's class on a monthly basis and then offered constructive criticism on handling the students. Claimant received $920 per semester for teaching; PHCC did not deduct withholding and social security taxes from *626 claimant's paychecks. Additionally, PHCC had a contractual right to cancel claimant's course if the number of students enrolled was too low. Claimant admitted that he never saw a workers' compensation insurance policy covering him at PHCC, and that PHCC never furnished information about such a policy, but he testified that he was covered with insurance in case of a work-connected accident at PHCC. An officer of PHCC testified that the college, as of July 14, 1981, had workers' compensation coverage, and that no distinction was made between full-time and part-time instructors. Claimant stopped working at PHCC after his second operation because he was unable to lift heavy objects. After completing therapy, claimant contacted PHCC about returning to his former position, but PHCC did not have an opening for a part-time welding instructor.
In September 1981, claimant, because of his injuries, was no longer able to perform the duties of a ground equipment operator. He was then transferred to the position of engineering clerk, although the employer continued, until December 1982, to pay him the same wage-rate as was paid to him as a ground equipment operator. After that, claimant became an engineering draftsman and the employer reduced his pay to the rate appropriate to his new position. Claimant continues to work full-time for the employer.
Claimant filed requests for wage loss benefits from his primary employer, seeking to have included within his AWW earnings from his concurrent employment as an instructor at PHCC. Tampa Electric controverted those requests, asserting at the hearing below that claimant had voluntarily limited his income by failing to accept employment commensurate with his abilities after reaching maximum medical improvement. Claimant testified that he had continued to look for evening and weekend work, but could name only four prospective employers, including PHCC, that he had contacted from the date of maximum medical improvement (February 28, 1983), until the date of the final hearing (February 29, 1984). None of those employers had jobs available. Claimant also testified that the condition of his knee limits the type of part-time work that he can obtain.
Dr. Homan, who performed the first surgery on claimant's right knee, concluded that as of the date of maximum medical improvement, claimant had a ten percent permanent physical impairment rating under the Orthopedic Surgeons Manual. Dr. Indelicato, who performed the second surgery, reported that claimant had 100 percent of his strength back in his right leg as of August 1983. Dr. James Murphy, an orthopedic surgeon who examined claimant in January 1984, concluded that claimant's complaints of pain were out of proportion to his condition.
In his final order, the deputy found that claimant's retroactive pay increase and his part-time earnings from PHCC should be included in a recomputation of claimant's AWW; that claimant has a permanent physical impairment; and that claimant is entitled to wage loss benefits pursuant to his corrected AWW.
Regarding the retroactive pay increase issue, the arguments raised suggest a potential conflict between sections 440.02(21) and 440.14(1). The former statute states in pertinent part: "`Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury... ." (e.s.) Section 440.14(1)(a) provides for the computation of the AWW as follows:
If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks.
(emphasis supplied.)
The deputy, reasoning that because section 440.14(1)(a) provides that the AWW should be based upon wages actually earned the thirteen weeks before the injury, and not on wages paid, determined that *627 the wages paid following the accident should be included within claimant's AWW, since they were earned before the occurrence of the two injuries. The deputy relied upon City of Titusville v. Taylor, IRC Order 2-2378 (August 23, 1973), cert. den., 287 So.2d 687 (Fla. 1973), as support for this conclusion. Appellant, on the other hand, argues that because the claimant's later retroactive pay increase was not, as required by section 440.02(21), "the money rate at which the service rendered ... [was] recompensed under the contract of hiring in force at the time of the injury", the amount of the increase should not be included within the AWW. Appellant also argues that the contract in force at the time of the injury was either the original union contract, which had expired on March 31, 1981, but contained a continuation provision, or, if no formal contract was then in effect, the employment relationship continued on an at will basis at the same wage rate. Under the circumstances, appellant contends, claimant is unable to demonstrate that at the time of the injury he was receiving an increased "tangible benefit of a real present-day value". State, Department of Health and Rehabilitative Services v. Ryan, 381 So.2d 269, 270 (Fla. 1st DCA 1980).
The difficulty with appellant's argument is that we do not consider that the two statutes speak in plain and unmistakable terms in regard to a situation in which a pay increase is made retroactive to a period of time more than 13 weeks before a claimant's industrial injury. Admittedly, the contract, which expired March 31, 1981, provided that after its expiration, and during negotiation of a new contract, "shall remain in full force and effect", and claimant was at the time of the injury paid wages under the terms of the expired contract. Yet, claimant reasonably contemplated at the time of his injuries, based upon the prior common practice between the employer and the union, that his wages would be retroactively increased as of the day following the expiration of the union contract. In fact, upon approval of the collective bargaining agreement on October 19, 1981, claimant earned wages retroactive to April 1, 1981, or for a period of time more than thirteen weeks before his first accident, lending support to appellee's argument that his AWW should be determined by the amount of wages actually earned.
The factual scenario in the case at bar is not unlike that before the Industrial Relations Commission in City of Titusville v. Taylor, in which the Commission, in interpreting Section 440.14(1), Florida Statutes (1971), concluded that the appropriate amount to be included in claimant's AWW was the amount he earned, not the monies actually paid to him during the 13-week period preceding the occurrence of the injury.
In our judgment the statutes in question are reasonably susceptible to the interpretations placed upon them by both appellant and appellee. On the one hand, appellant makes a very plausible argument that the contract of hiring in force at the time of the injury was in fact the expired union contract, because the contract contained a continuation clause providing that the expired contract should remain in force and effect until the new contract was ratified. On the other hand, as appellee points out, the contract also provided that the wage rate expired on March 31, 1981, and, although claimant was paid wages pursuant to the terms of the expired contract during the interim period, he actually earned wages pursuant to the terms of the revised contract, retroactive to April 1, 1981.
The rule is clear that in construing statutory sections under Chapter 440, this court is to be guided by the "most favorable remedy" doctrine, which requires that "`where the Act is susceptible of disparate interpretations, the court will adopt the construction which is most favorable to the employee.'" Kerce v. Coca-Cola Company-Foods Division, 389 So.2d 1177, 1178 (Fla. 1980) (quoting Henderson v. Sol Walker & Co., 138 So.2d 323, 327 (Fla. 1962)). Following the above doctrine of construction, we construe section 440.14(1)(a) in favor *628 of claimant-appellee, and affirm the order directing the employer to recompute the AWW and compensation rate by reason of the claimant's pay increase made retroactive to a period of time more than thirteen weeks before his two accidents.
The second issue is whether the deputy correctly included within claimant's average weekly wage his earnings as a part-time instructor at PHCC. Claimant's testimony that he was covered under a workers' compensation policy at PHCC was uncontroverted. That evidence, along with the PHCC officer's testimony that the workers' compensation insurance policy at the college covered part-time instructors, constitutes competent, substantial evidence to support the deputy's finding that claimant was a covered employee. Cf. Ravenswood-Griffin Volunteer Fire Department v. Newman, 422 So.2d 321 (Fla. 1st DCA 1982). Moreover, there is competent, substantial evidence to support the deputy's finding that claimant was an employee  not an independent contractor  at PHCC. That "determination is normally for the finder of fact and must depend upon the peculiar facts of each case." Boyd-Scarp Enterprises, Inc. v. Saunders, 453 So.2d 161, 164 (Fla. 1st DCA 1984). The criteria indicating an employee-employer status in the case at bar include: (1) PHCC provided the classroom, lab, tools and all equipment necessary for claimant's class; (2) claimant performed the work of the employer, and not that of a distinctly different occupation; (3) PHCC selected all textual materials for the class; (4) PHCC set the meeting times for all classes; (5) the provost personally supervised claimant by observing his performance on a monthly basis; and (6) PHCC had the right to cancel claimant's class if a minimum number of students did not register for it. See also Natural Landscaping, Inc. v. Snyder, 466 So.2d 1184 (Fla. 1st DCA 1985); Saunders, 453 So.2d at 163-64; Pearson v. Harris, 449 So.2d 339 (Fla. 1st DCA 1984); Orcutt v. Environmental Technologies, Inc., 432 So.2d 701 (Fla. 1st DCA 1983). The fact that PHCC did not take payroll deductions from claimant's paychecks does not override the evidence establishing that claimant was an employee. "[T]he payment of wages is the least important factor in determining the character of the relationship... ." Boyd-Scarp, 453 So.2d at 164. As to the issue of whether claimant can be considered an employee of PHCC, the deputy properly ruled that claimant's earnings from PHCC should be included in the computation of AWW.
The employer also argues that claimant's alleged loss of wages is the direct result of economic conditions, unrelated to his industrial injury, and that claimant has failed to make a good faith work search; therefore his part-time wages as an instructor at PHCC were improperly included in the AWW. Claimant of course has the burden of proving all elements of his wage loss claim. Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982). Pursuant to Section 440.15(3)(b)2, Florida Statutes (1981), a claimant must show "that any wage loss claimed is the result of the compensable injury." As we observed in Williams Roofing, Inc. v. Moore, 447 So.2d 968, 972 (Fla. 1st DCA 1984): "[T]he deputy commissioner must look to the totality of the circumstances to determine whether a claimant has shown a causal relationship between the injury and the wage loss." (e.s.) Although Dr. Homan opined that claimant has a permanent physical impairment from his industrial injuries, the employer contends there is no medical evidence to support a finding that claimant's permanent impairment is a contributing causal factor to his inability to obtain part-time employment, therefore a good faith work search cannot be excused. Claimant's testimony of continued pain and swelling, standing alone, is of course insufficient to establish his entitlement to wage loss benefits. See Piccadilly Cafeteria v. Polite, 433 So.2d 591, 592 (Fla. 1st DCA 1983).
The general rule is that absent medical evidence indicating an inability to work, an award of wage loss benefits is proper only if claimant demonstrates that he made a good faith job search. Id. The employer *629 argues that because claimant contacted only four prospective employers during a year's period, such work search cannot be deemed a good faith effort. See Musgrave v. State, Department of Transportation, 466 So.2d 1238 (Fla. 1st DCA 1985) (contact with three potential employers during a four-month period does not constitute a good faith work search).
We could agree with the employer's contentions if appellee had not resumed full-time work with his primary employer, at a reduction of pay, which the employer does not argue was not attributable to the compensable injury. As the deputy stated in his order: "Since the Claimant is working full-time, despite his permanent impairment, the defense that he is voluntarily limiting his income is not persuasive." Obviously, claimant, under such circumstances, would be entitled to wage loss as to any diminution in his wages from his primary source of employment.
The employer has failed to take proper account of that provision of section 440.15(3)(b)2, providing: "The amount determined to be the ... wages ... the employee is able to earn after reaching the date of maximum medical improvement shall in no case be less than the sum actually being earned by the employee... ." (e.s.) See Avalon Marion I.C.F. v. Stark, 450 So.2d 895 (Fla. 1st DCA 1984) (award of wage loss benefits sustained on evidence showing that claimant resumed work with employer at a reduced rate of pay that was directly due to his physical limitations resulting from the injury).
Once the claimant has met his initial burden of showing "that any wage loss claimed is the result of the compensable injury",[1] section 440.15(3)(b)2, (1981), the burden is then placed upon the employer to demonstrate that the claimant has refused to work or that he has voluntarily limited his income. D & R Builders, Inc. v. Quetglas, 449 So.2d 988 (Fla. 1st DCA 1984); D.L. Amici Co. v. Jackson, 444 So.2d 978 (Fla. 1st DCA 1983), rev. denied, 451 So.2d 848 (Fla. 1984).
The statute does not require the claimant, after he has presented evidence disclosing that the compensable physical limitation was an element in the causal chain contributing to the wage loss, to show that he undertook a good faith work search as to each part-time job held by him prior to his injuries, in an effort to prove that any resulting wage loss therefrom was attributable to the compensable injury. The burden instead shifts to the employer to show the contrary. Once a claimant has presented other proof establishing that the physical limitation was a causative factor to the loss of wages claimed, the employer's burden is not met by evidence showing an inadequate work search. The employer can satisfy his burden only by presenting affirmative proof that the claimant voluntarily limited his income or refused work. Such evidence might include facts disclosing the availability of other part-time employment commensurate with the employee's skills, and claimant's refusal to test his ability to perform such labors. It is not enough, however, for the employer to attack the inadequacy of a work search after the causal link between disability and wage loss has otherwise been established.
It should be remembered that the work search requirement is a judicially created evidentiary tool "by which employability, or lack of it, is proven." Flesche v. Interstate Warehouse, 411 So.2d 919, 922 (Fla. 1st DCA 1982). Indeed, as Flesche states, "[T]here are a number of criteria by which wage-earning capacity must be measured, and `no single factor is conclusive.'" Id. n. 3 (quoting Walker v. Electronic Products & Engineering Co., 248 So.2d 161, 163 (Fla. 1971)). Accord Regency Inn v. Johnson, *630 422 So.2d 870, 877-78 (Fla. 1st DCA 1982). Restated, our decisions reflect that:
There are ... an extreme variety of potential evidentiary issues in establishing a prima facie case of causal connection between a compensable accident and later wage loss. Whether or not job search evidence is primary or secondary, i.e., whether it is relevant only after some initial burden is met by a claimant, clearly must be decided in the context of particular facts, and our opinions must be read in that light.
Publix Supermarkets, Inc. v. Franklin, 467 So.2d 1031, 1033 (Fla. 1st DCA 1985) (e.s.). For example, Publix Supermarkets interpreted the deemed earnings provision of Section 440.15(3)(b)2, Florida Statutes (1981), as permitting opinion testimony to establish indirectly the value of that part of claimant's wage loss which was attributable to medical restriction, and sustained an award of wage loss, despite the absence of a work search, based upon the difference between the amount which claimant was deemed able to earn after the injury and the amount earned before.
In the case at bar we have before us facts showing that claimant's industrial injury displaced him from his employment, and that the impairment caused by the compensable injury restricted his return to the same type of labors that he had performed before the accident, thereby satisfying the initial statutory requirement that the physical limitation be a contributing causative factor in the wage loss claimed. Claimant was under no duty thereafter to conduct a job search, and as the employer has failed to present any evidence disclosing that claimant voluntarily limited his income, the order of the deputy is in all respects
AFFIRMED.
BOOTH, C.J., concurs.
THOMPSON, J., dissents with written opinion.
THOMPSON, Judge, dissenting.
The deputy commissioner (deputy) found § 440.14(1)(a), Fla. Stat., provides that the average weekly wage (AWW) shall be based upon the wages that were actually earned during the 13 weeks before the injury and not on wages actually paid. Therefore, he ruled that a subsequent retroactive pay raise should be included in the determination of claimant's AWW. The majority agrees that the retroactive pay raise should be included in the AWW determination because there is some ambiguity as a result of a possible conflict between § 440.02(21) defining wages and § 440.14(1) relating to the determination of the AWW.
Section 440.02(21) defines wages as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury ..." (emphasis supplied), whereas § 440.14(1)(a) provides that the AWW is to be based on the average of the weekly wages earned during the 13 weeks immediately preceding injury. Because the latter statute provides that the AWW shall be based on the amount the claimant earned and not the amount actually paid to him, the majority holds that the retroactive pay raise should be included in the computation of the AWW. If there is an ambiguity or potential conflict between the two statutes then the court is justified in interpreting those statutes so as to resolve the ambiguity or conflict, and any doubt should be resolved in favor of the claimant. However, there is no ambiguity or conflict between the two statutes. They are clear and unambiguous and should be given their clear and unambiguous meaning. While § 440.14(1)(a) does refer to the amount earned rather than to the amount paid, subsection 440.14(1), of which subsection (1)(a) is a part, provides:
(1) Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation... . (Emphasis supplied.)
This language is the same as that contained in the wage definition statute. Both *631 require that the wages of the employee at the time of the injury be the basis upon which to compute compensation. I would therefore reverse the deputy's calculation of the AWW.
Although the record reveals that the claimant contacted only four prospective employers during the year after he reached maximum medical improvement, the deputy found that the claimant had made a good faith attempt to secure additional part-time employment. Citing Musgrave v. State, Department of Transportation, 466 So.2d 1238 (Fla. 1st DCA 1985), the majority admits that the claimant did not make a good faith attempt to secure additional part-time employment, but excuses this failure by saying that he is working full time with his primary employer. If he is not required to make a good faith search for part-time employment, then the amount he earned from his secondary or part-time employment with Pasco-Hernando Community College (PHCC) should not be considered in determining the amount of the wage loss.
I would reverse the award of wage loss benefits and remand the case for redetermination of these benefits based on his correct AWW at the time of claimant's injury and without consideration of his earnings at PHCC.
NOTES
[1] This showing requires "evidence indicating that the compensable physical limitation is a contributing causative factor in the wage loss claimed." City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA 1984) (e.s.). Even though Rumph discussed the claimant's initial burden after the 1983 amendment to section 440.15(3)(b)2, this court construed the amendment as "emphasizing" or clarifying, not changing, the burden established in the pre-1983 version of section 440.15(3)(b)2. Id. at 576-77.