503 So.2d 1327 (1987)
James WITZKY, Appellant,
v.
WEST COAST DUPLICATING & CLAIMS CENTER, Appellee.
No. BM-290.
District Court of Appeal of Florida, First District.
March 10, 1987.
Rehearing Denied April 1, 1987.
A. Dawn Hayes, of Earle & Thompson, St. Petersburg, for appellant.
Kathleen R. Hudson, St. Petersburg, for appellee.
ZEHMER, Judge.
Claimant, James Witzky, appeals an order of the deputy commissioner excluding certain commissions from the calculation of his average weekly wage. He argues it was error to exclude commissions earned but not paid to him during the thirteen-week period immediately preceding the industrial accident. We reverse.
Claimant injured his lower back in a work related accident on February 26, 1985. At the time of the accident, claimant was employed by West Coast Duplicating as a salesman, earning a base salary plus commissions. Compensation benefits were paid from March 26, 1985, until December 24, 1985, at the rate of $211.81 per week. Claimant made several sales during the thirteen weeks immediately prior to the accident for which he was not actually paid commissions until after the accident. Arguing that he had "earned" the commissions before the accident and that they should be included in the calculation of his average weekly wage, claimant requested an increase in his average weekly wage and compensation rate.
Prior to working at West Coast, claimant was employed as a duplicating equipment salesman by Bay Area Duplicating and was paid $500 per week, or approximately $26,000 *1328 per year. Claimant went to work for West Coast when it purchased all the inventory of Bay Area. He testified that although he agreed to accept a lower base salary ($200 per week), plus 40% commission on all sales made by him, he and his employer contemplated that his overall weekly compensation would remain about $26,000 per year, an average of about $500 per week. Claimant testified that his commissions were "earned" when the sale was made, although he did not get "paid" until the customer paid West Coast for the equipment.
Sam Thurman, president of West Coast, testified:
When the equipment is paid for is when we actually pay the commission. If you say earned, it's when a sale is made, we assume that a commission is earned when we have a signed contract for the equipment, but we do not pay commissions; therefore, possibly by the straight letter of the law, it wouldn't be until it's paid for. We don't pay the commissions to the salespeople until the equipment is paid.
(R. 38-9). Thurman did not dispute claimant's testimony that he was expected to earn $26,000 per year.
The deputy commissioner ruled that only commissions actually paid to claimant during the thirteen-week period immediately prior to his injury would be included in calculating claimant's average weekly wage, and figured total commissions and salary paid to claimant during this period to be $4,330.50. The deputy, applying section 440.14(1)(a), reduced that amount by the cost of health insurance benefits still provided by the employer and servicing agent, and determined the average weekly wage to be $296.87. Claimant's contention that this amount was well below his expected income of $26,000 per year, or $500 per week, was unpersuasive. Claimant appeals this final order.
Section 440.14(1)(a), Florida Statutes (1985), speaks in terms of wages "earned" by a claimant during the thirteen week period immediately preceding an accident, and is not necessarily limited to the amount of money actually paid to the claimant. See Tampa Electric Co. v. Bradshaw, 477 So.2d 624 (Fla. 1st DCA 1985) (appropriate amount to be included in average weekly wage was the amount claimant earned, not just the monies actually paid to him during the thirteen-week period preceding the accident). Commissions fall within the term "wages" and should be included in a determination of average weekly wage. Miller v. Ben's Service Station, Inc., 417 So.2d 266 (Fla. 1st DCA 1982). Here, the parties testified that the commissions were "earned" when a sale was made, although they were not paid to claimant until the employer was paid. Accordingly, amounts so earned should have been included in calculating the claimant's average weekly wage.
Prior to the accident claimant closed sales of equipment on January 29, 1985, February 1, 1985, and February 20, 1985, earning commissions on these sales totalling $1,002.91. In addition, claimant received a check for $250 on February 27, 1985, for training work he had done from February 1, 1985, through February 28, 1985. Of that amount, $187.50 was earned prior to the accident. These "earned," but not "paid," amounts should also have been included in the calculation of average weekly wage.
Under the rule discussed above, the $1,951.46 commission earned by claimant from the sale of equipment to Let Us Print was properly excluded by the deputy in calculating claimant's average weekly wage. The owner of Let Us Print testified that, while he decided to purchase the equipment in January 1985, he did not place the order until March 22, 1985. Therefore, the equipment was not "sold," and the commission was not "earned," until the order was actually placed, several weeks after the accident.
Our holding in this case, that for the purpose of calculating average weekly wage under section 440.14(1)(a), commissions were "earned" when the sale was closed rather than when payment of the purchase price was ultimately received by *1329 the employer and the commission paid to claimant, comports with the underlying theory and purpose of calculating average weekly wage, which is simply a method of establishing the value of an employee's lost ability to earn future wages during the period of disability attributable to the covered industrial accident.[1] The statute uses the term "earned," instead of the term "paid," to focus attention on the ability of the employee to physically engage in remunerative employment, a fact which may or may not be temporally related to the date the employee receives payment for such services. The time and labor required of claimant to earn each commission was substantially completed by the time the order was placed. It was not shown that claimant was required to perfect delivery and collect payment or that he had any control over these activities. The date payment was ordinarily received by the employer was not shown to be sufficiently close, temporally, to claimant's sales activity to support an inference that the act of paying the employer was competent proof of claimant's physical ability to work.
If claimant's compensation agreement with his employer was intended by both to produce approximately $26,000 in income each year, it should be obvious that limiting average weekly wage calculations to commissions received during the arbitrary thirteen-week period specified in section 440.14(1)(a), is not a fair and satisfactory method of measuring claimant's lost earning capacity. Certainly, since the basis of compensation was annual earnings likely to fluctuate from quarter to quarter, a more rational basis for determining claimant's average weekly wage would be to calculate his annual earnings and divide by fifty-two weeks, as in the case of a seasonal worker under section 440.14(1)(c). But the supreme court's construction of section 440.14 in Waymire v. Florida Industrial Commission, 174 So.2d 404 (Fla. 1965), although severely criticized as "the most inexcusably rigidified interpretations of the wage formula to be found anywhere" because of its "literalistic approach" (Larson, pages 10-556 through 10-558), precludes resort to a more equitable method of determining average weekly wage and requires rigid application of the thirteen-week period specified in 440.14(1)(a) even though the commissions forming the basis of compensation are routinely paid a considerable time after completion of the sales activities of the claimant. Cf. Anstead v. Cox Broadcasting, 500 So.2d 197, 198 (Fla. 1st DCA 1986) (Ervin, J., specially concurring). As suggested by Judge Ervin's opinion in Anstead, because the timing of the receipt of income may not be directly related to the wage-earning activities of a claimant, the wage data used under 440.14(1)(a) may cause the average weekly wage to be set artificially above normal or below normal, depending entirely upon fortuitous circumstances unrelated to one's physical ability to perform work and earn income. The issue before us falls in that troublesome area requiring determination of lost earning capacity where the injured employee has been employed full-time for at least thirteen weeks and meets the requirements of section 440.14(1)(a), although the agreed-upon method of compensation for that person's services does not readily lend itself to using the limited thirteen-week period prescribed by that subsection as a fair and reasonable determination of lost earning capacity. See, e.g., Anstead v. Cox Broadcasting, 500 So.2d 197; Miller v. Ben's *1330 Service Station, Inc., 417 So.2d at 267.[2] Bearing in mind the purpose underlying average weekly wage calculations, the only fair and truly reasonable method of determining a claimant's loss of earning capacity in commission cases such as this is to consider total compensation attributable to commissions earned over the specific compensation period contemplated by both the employer and the claimant, in this case a one-year period.
Nearly all the recent cases cited in this opinion have criticized the lack of flexibility and discretion accorded the deputy commissioner to fairly determine lost earning capacity under past decisions construing section 440.14, and the decisions have implored the legislature to adopt corrective legislation. Once more, we strongly urge the Chief Commissioner, Division of Labor, and the legislature to promulgate appropriate legislative amendments to correct the unfairness (to both employers and employees)[3] inherent in determining average weekly wage on the basis of thirteen weeks' earnings in cases where the time of receipt of such earnings, like commissions and bonuses, is not directly tied to the time of performance of the work. The statutory amendments should also modify the rigid statutory constraints imposed on deputy commissioners and this court by the supreme court's decision in Waymire v. Florida Industrial Board, 174 So.2d 404, to permit deputies, in their discretion, to use alternative methods for calculating average weekly wage under section 440.14 that are fairer and more consistent with the contracts of employment and intentions of the parties, without having to give priority to subsection (a). These statutory improvements would unquestionably make average weekly wage calculations more equitable and, hopefully, would also reduce the amount of litigation and number of appeals involving these issues.
The appealed order is reversed and remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
ERVIN and SHIVERS, JJ., concur.
NOTES
[1] It is stated in a leading treatise:

The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.
2 Larson, The Law of Workmen's Compensation, § 60.11(d), pp. 10-564 (1986) [hereafter Larson]. See also Anstead v. Cox Broadcasting, 500 So.2d 197, 202 (Fla. 1st DCA 1986) (Ervin, J., specially concurring), and Miller v. Ben's Service Station, Inc., 417 So.2d at 267.
[2] Examples of similar, if not directly related, problems in determining when wages are "earned" under arbitrary statutory provisions setting specific time frames for calculating wage loss benefits under section 440.15(3)(b)(2) are encountered when a claimant is compensated by commissions. National Distillers v. Guthrie, 473 So.2d 806 (Fla. 1st DCA 1985), and 443 So.2d 354 (Fla. 1st DCA 1984), and Carpenters R.V. Service v. Eckert, 455 So.2d 590 (Fla. 1st DCA 1984). Consider, likewise, the difficulty in resolving, under present statutory provisions, the reasonable and fair measurement of loss of earning capacity when a claimant receives a retroactive pay adjustment shortly after an accident. Tampa Electric Co. v. Bradshaw, 477 So.2d 624 (Fla. 1st DCA 1985).
[3] It works both ways. Had all sales commissions developed by claimant over, say, nine months have been paid to him in the thirteen-week period prior to his injury, thus grossly inflating his average weekly wage, would not the employer and servicing agent, rather than claimant, have brought this appeal? Cf. National Distillers v. Guthrie, 473 So.2d 806 (Fla. 1st DCA 1985).