ZEHMER, Judge.
The claimant appeals the deputy commissioner’s calculation of his average weekly wage, arguing that the deputy erred in excluding amounts paid to him after the accident.
Haynes, a general contractor, and his wife own a contracting corporation known as Gordon Haynes State Certified General Contractors, Inc. He is the sole corporate officer, and prior to the accident he was the corporation’s only carpenter. On November 7,1984, he was involved in an industrial accident. He was released to go back to work in early 1985 and continued employment with his contracting business, although he changed his duties somewhat due to the accident. Haynes testified that after the accident his work duties included “anything from cleaning up the exterior of a house, the inside of a house, to labor work through some of the framing and trim work, picking materials up, drywall patch and things like that.” He stated that he no longer worked as a carpenter.
Through August 12, 1985, the claimant received temporary total disability benefits at the rate of $288 per week totalling $8064 and wage loss benefits totalling $3168. Claimant then sought temporary partial wage loss benefits from August 12, 1985 and continuing, and a determination of his average weekly wage. The employer/carrier claimed it overpaid claimant due to the fact that it had picked an artificially high average weekly wage of $600 per week and, therefore, claimant was not entitled to further compensation.
The claimant’s corporation is structured so that claimant will “receive money basically twice a year or as I may need. And we tie what I receive at a corporate level on how well the corporation does.” He was paid $10,000 in June 1984. Claimant testified this was for work done as a carpenter, and that the $10,000 covered his salary for the period of January 1984 through June 1984. Regarding the work he performed between June 1984 and November 7, 1984, claimant stated he was not paid until May 1985, when he received a $25,000 payment. He stated that without the accident he probably would have been paid somewhere between January and May. The claimant explained that a portion of the $25,000 amount was for carpentry work performed prior to the accident:
[wjell, when I was injured they asked what my average weekly wage would have been and there was no checks prior to that, so I based it on, as I told Commercial Union, what my worth as a carpenter was at $15.00 an hour so that’s $600.00 a week. So, $600.00 a week from June until the time of the accident, I think it’s whatever that comes to and *473 the balance is what ... the rest I received as in a corporate capacity, a bonus or what the corporation....
The remainder of the $25,000 was paid to the claimant as compensation for his work as a corporate official. He stated he never got a weekly check for what he did as a corporate officer, but instead, he got paid from the profits if there were any. At the request of Commercial Union to pay himself on a weekly basis, claimant currently receives between $100-200 per week for his work as a laborer.
In calculating claimant’s average weekly wage the deputy found (1) that during the year preceding the accident claimant paid himself $10,000 and that claimant’s wife also received $10,000; (2) for the 13 week period immediately preceding the November 1984 accident claimant received no compensation; (3) in May 1985 claimant paid himself a “bonus” of $25,000; and (4) in August 1985 claimant began drawing weekly income from his business in amounts of $150-200. Claimant urged the deputy to consider all or part of the $25,000 as compensation earned prior to the date of the accident, but not paid until after the accident. The deputy rejected this suggestion, saying that although claimant may have earned some of the $25,000 prior to his injury, it would be “speculative to consider that amount of income as being in-cludable in the determination of an average weekly wage.”
The deputy concluded that although it was difficult to calculate the average weekly wage using § 440.14(l)(a), it was the fairest determination of any method contained in § 440.14. The deputy ruled that the claimant should have an average weekly wage based on an annual “salary” of $10,000, thus entitling claimant to an average weekly wage of $192.31 and a compensation rate of $128.08. The deputy further ruled that the employer/carrier should be given credit for all compensation benefits overpaid and may set off future indemnity benefits. The deputy also concluded the claimant was able to perform remunerative employment, had deemed earnings at least equivalent to his average weekly wage and was not owed additional benefits at the present time.
A line of decisions have required that a claimant who has been employed regularly for the 13 weeks immediately prior to the compensable accident must have his average weekly wage calculated pursuant to § 440.14(l)(a). E.g., Coles v. Gainesville Bonded Warehouse, 409 So.2d 1205 (Fla. 1st DCA 1982); Boree Harvesting v. Sanders, 413 So.2d 1279 (Fla. 1st DCA 1982). This inflexible construction of the statute has led to anomolous results in certain cases where the injured employee is not paid on a weekly basis soon after his labor is performed. See, e.g., Witzky v. West Coast Duplicating & Claims Center, 503 So.2d 1327 (Fla. 1st DCA 1987). It is well established that the determination of average weekly wage under § 440.14(l)(a) is to be based on wages earned and not necessarily wages paid during the 13 week period. Id.; Tampa Electric Co. v. Bradshaw, 477 So.2d 624 (Fla. 1st DCA 1985). Since it was undisputed that claimant was continuously employed during the 13 week period immediately prior to the accident, the deputy did not err in looking to this section to calculate claimant’s average weekly wage.
However, the deputy erred in the application of § 440.14(l)(a) to the facts appearing in the record. This subsection of the statute speaks in terms of wages earned in the thirteen weeks immediately preceding the accident, stating that “average weekly wage shall be one-thirteenth of the total amount of the wages earned in such employment during the 13 weeks.” Relying on this subsection the deputy stated:
That in determination of the average weekly wage issue, it appears that the claimant did not earn any monies during the IS weeks prior to his accident, although he was employed substantially all of the IS week period as described in 440.14(l)(a), F.S. It is difficult to calculate the average weekly wage based upon this section, due to the fact that the Claimant, technically, would be entitled to an AWW of zero dollars and it is obvious that the Claimant did have eon- *474 siderable “value” to his employer. Claimant’s counsel wishes the undersigned to take all or a portion of the $25,000.00 “bonus” paid to the Claimant in 1985 as compensation “earned” prior to the date of the accident. Although the Claimant might well have earned a portion of that amount during the 13 weeks prior to the accident, it would certainly be speculative to consider that amount of income as being includable in the determination of an average weekly wage. The fairest resolution of this issue appears to be, after consideration of the amounts paid before and the potential of bonuses paid after the accident as earned prior to the accident, that the Claimant should have an average weekly wage based upon an annual “salary” of $10,000. This would entitle the Claimant to an average weekly wage of $192.31 and a compensation rate of $128.08.
[Emphasis added.] It is readily apparent that the deputy’s findings are ambiguous and inconsistent to the extent that he found claimant did not earn (in the sense of being paid) any money during the 13 week period although during that period his services had considerable value to the employer and he might well have earned a portion of the $25,000 during that time.
We find there is no competent substantial evidence to support the deputy’s conclusion that claimant’s annual "salary” was $10,000 or that his average weekly wage was $192.31. No evidence was presented that established claimant’s annual salary as $10,000. The claimant testified that the $10,000 payment made in June 1984 was for work done for the period from January through June 1984. His uncontra-dicted testimony established that he worked as a carpenter and earned part of the $25,000 prior to the accident. Claimant testified his average weekly wage as a carpenter was $15 an hour, or approximately $600 a week. Therefore, it was not necessarily speculative, as stated by the deputy, to consider a part of that amount as income earned during the critical 13 week period and thus includable in average weekly wage.[1]
On remand, if § 440.14(l)(a) is to be followed in calculating claimant’s average weekly wage, it will be necessary to determine the number of hours or days the claimant worked during the thirteen weeks immediately preceding the accident, and a reasonable amount per hour or per day to show the value of the claimant’s services as a carpenter based on credible evidence of such work and its value. The deputy should take additional evidence on this issue if he deems it necessary.
The claimant also contends that the deputy erred (1) in finding that the claimant was not entitled to wage loss benefits from August 12, 1985 through January 31, 1986; (2) in giving the employer a set-off on future benefits; and (3) in denying claimant costs, penalties, and attorney’s fees. We do not reach these issues because they stand or fall on the determination of average weekly wage. Since claimant’s average weekly wage must be redetermined, these issues also must be redetermined on remand.
REVERSED AND REMANDED.
ERVIN and SHIVERS, JJ., concur.

. The deputy did not expressly reject the claimant's testimony as incredible.