SHIVERS, Judge.
The employer/carrier appeal from a workers’ compensation order, contending the deputy commissioner erred in:
(1) determining that medical expenses connected with the treatment of claimant’s rectal bleeding were causally related to the compensable injury; and,
(2) combining claimant’s noncovered, part-time employment wages with his covered employment wages to determine the average weekly wage for compensation.
We affirm the award of medical expenses related to claimant’s rectal bleeding, but reverse the determination of claimant’s average weekly wage.
Claimant sustained a compensable accident on November 13, 1979, when he was bitten by a wild animal while working for the employer, Department of Corrections. As a result of an adverse reaction to rabies shots, claimant developed post-antirabies encephalomyelopathy which caused the loss of use of his right leg, a speech impairment, and an impairment of his right arm.
At the time claimant was working for the employer at an average weekly wage of $250 per week, he had a part-time job as a caretaker on 20 acres of land earning an additional weekly wage of $100. The employer/carrier contended below that claimant’s wages from his part-time employment should not be used to calculate his average weekly wage since the part-time employment constituted agricultural labor which is excluded from coverage under Chapter 440, Fla.Stat. Because of claimant’s speech impairment, the only evidence on this issue was the testimony of claimant’s wife who had been appointed claimant’s guardian. She testified that claimant looked after the 20 acres for the landowner who used the property as a “weekend” retreat. She said it was not really a farm although the owner kept some cows, a horse, chickens, rabbits, and dogs on the property. She testified that the owner did not do any “farming” on the property and that the claimant was the only employee. In the appealed order, the deputy commissioner rejected the employer/carrier’s contention that claimant’s part-time caretaker’s job was not covered employment under Chapter .440 because there was no evidence to support the contention.
Subsequent to the accident, claimant developed rectal bleeding while hospitalized. The employer/carrier contended that the rectal bleeding was not causally related to the claimant’s injury and that they should therefore not be required to pay the medical bills related to treatment for the bleeding. Claimant’s wife testified that claimant had never experienced rectal bleeding until several weeks after the accident. Dr. Saludo, claimant’s treating physician, attributed the bleeding to the stress and anxiety claimant experienced as a result of his sudden overall disability. Dr. Geslani, treating neurologist, testified that he would defer to Dr. Saludo as the general treating physician or a psychiatrist regarding the cause of claimant’s rectal bleeding. The deputy commissioner accepted Dr. Saludo’s testimony and rejected Dr. Geslani’s testimony, concluding that claimant’s rectal *161 bleeding and subsequently related medical bills were causally connected to the claimant’s injury and resulting condition.
Since there is competent, substantial evidence to support the finding that claimant’s rectal bleeding was causally related to the injury and resulting condition that he suffered from the accident, the award of medical expenses incurred for treatment of the bleeding is affirmed.
However, the deputy commissioner did err in combining claimant’s part-time wages with his full-time wages from the employer because the part-time wages were earned in employment excluded from coverage under Chapter 440. Rollins Building Services, Inc. v. Thomas, 393 So.2d 665 (Fla. 1st DCA 1981); Randell, Inc. v. Chism, 404 So.2d 175 (Fla. 1st DCA 1981). Claimant’s employment as a caretaker was excluded from coverage under Chapter 440 on at least one of three grounds. First, if claimant’s part-time employment is classified under Section 440.02(l)(c)2., Florida Statutes (1979), as “agricultural labor performed on a farm in the employ of a bona fide farmer” who “employs 5 or less regular employees,” such employment is non-covered employment and those wages should not be used in computing the average weekly wage. Jay Livestock Market v. Hill, 247 So.2d 291 (Fla.1971). As Section 440.02(l)(c)2., supra, points out, “the term ‘farm’ includes stock, dairy, poultry, fruit, [and] fur-bearing animals .... ” However, the record is unclear as to whether claimant’s part-time employer was a “bona fide farmer” so as to classify claimant’s employment as agricultural labor because there was no testimony regarding the part-time employer’s occupation or trade.
Second, even if claimant’s employment was not agricultural labor, his caretaker duties would constitute those of a domestic servant in a private home. Under Section 440.02(l)(c)l., Florida Statutes (1979), covered employment does not include services performed as “domestic servants in private homes.” Claimant’s wages as a domestic servant are outside the operation of Chapter 440 and may not be used in determining the average weekly wage. Rollins, supra.
Third, assuming the part-time employment was neither agricultural labor nor services performed as a domestic servant, claimant’s employment as a landowner’s sole employee still constitutes noncovered employment. Under Section 440.02(l)(b)2., Florida Statutes (1979), the term “employment” includes only “private employments in which three or more employees are employed by the same employer.” See, Randell, supra, which held that the claimant’s part-time work for an employer who did not have three employees did not constitute employment within the purview of Chapter 440 and thus earnings from this employment should not have been included in determining his average weekly wage.
Consequently, it is clear that claimant’s part-time employment as a caretaker of 20 acres constituted non-covered employment regardless of whether he is classified as a farm hand, domestic servant, or sole employee, and therefore the deputy commissioner erred in using wages earned from such employment in computing the average weekly wage.
Accordingly, the appealed order is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
ERVIN and WENTWORTH, JJ„ concur.