531 So.2d 1361 (1988)
Markham ILEY and Kemper Group, Appellants,
v.
James LINZEY, Appellee.
No. 87-312.
District Court of Appeal of Florida, First District.
September 15, 1988.
Rehearing Denied November 3, 1988.
John E. McLain, III, and John P. Daly of Cooper, Rissman, Weisberg, Barrett & Hurt, Orlando, for appellants.
Irvin A. Meyers of Meyers and Mooney, Orlando, for appellee.
ZEHMER, Judge.
The employer, Markham Iley, and the carrier, Kemper Group, appeal an order of the deputy commissioner awarding claimant James Linzey temporary total disability benefits (TTD), determining claimant's average weekly wage (AWW), and awarding claimant taxable costs. For the reasons stated below, we affirm.
Claimant, a seasonal farm worker, injured his head and neck in an accident arising out of and in the course and scope of his employment on September 26, 1985. The accident was accepted as compensable by the employer and carrier, and they provided medical care and paid claimant $48 per week in TTD benefits until March 27, 1986. Claimant subsequently filed a claim seeking TTD benefits from March 28, 1986, and a determination of his correct AWW and compensation rate. At the hearing, much of claimant's 1985 employment was characterized as a series of one-time jobs, mainly performing a variety of general farm work such as picking eggplants, peppers, and squash. It was also established that at two of the jobs, those with Shirley's Furniture and Thelma Iley, claimant and his wife were the only employees. At Shirley's Furniture, claimant and his wife did odd work such as cleaning out a building and hauling off some garbage. For Thelma Iley, they built a utility shed and painted barn tops.
*1362 The deputy commissioner concluded that claimant was a seasonal worker entitled to have his wage determined on his total earnings during calendar year 1985 pursuant to section 440.14(1)(c). He determined that claimant's AWW was $284.90 per week, resulting in a compensation rate of $189.74. Although the employer and carrier argued that part of claimant's 1985 earnings were from employment not covered by the act, the deputy commissioner stated:
In making my finding on the average weekly wage I have carefully considered the employer/carrier's argument that part of the earnings that the claimant had during calendar year 1985 were from employment not covered under the Florida Workers' Compensation Act. There is a question as to whether part of claimant's earnings from seasonal employment in calendar year 1985 were from employment covered under the Florida Workers' Compensation Act. I find that it is not necessary to decide that factual issue because it is my finding and conclusion that in computing the average weekly wage of a seasonal employee it is not a requirement, as in concurrent employment, that the earnings be from employment covered under the Florida Workers' Compensation Act. This precise question has apparently not been answered by the appellate courts but it appears to this Deputy Commissioner that to require that all earnings which a seasonal worker has in a calendar year or fifty-two weeks preceding his accident be from covered employment would impose a burden on the claimant which would be unreasonable and not contemplated by Florida Statute 440.14(1)(c). Unlike claimants with concurrent employment, many seasonal workers have numerous jobs during a year, both in and out of the State of Florida, and to require them to prove that all of their earnings were from covered employment would be virtually impossible and would frustrate the intention of the Legislature in providing for an equitable method of calculating an average weekly wage on the basis of seasonal employment.
(R. 346-47). The employer and carrier were ordered to pay claimant TTD benefits from March 28, 1986, to the date of the hearing at the new compensation rate and to pay claimant any arrearage incurred from the date of the accident to March 27, 1986.
The employer and carrier first argue that the deputy commissioner erred in awarding TTD benefits because claimant unreasonably refused to undergo requested and recommended medical treatment. The record contains competent substantial evidence to support the deputy commissioner's finding that claimant had a valid reason for not attending the pain clinic. Finding no abuse of discretion on this issue, we affirm. Swanigan v. Dobbs, 442 So.2d 1026 (Fla. 1st DCA 1983).
Next, the employer and carrier contend that the deputy commissioner erred in calculating claimant's AWW and compensation rate. They argue that the deputy should not have included in claimant's wage base certain earnings from private employment in which less than three employees were employed by the employer because such employment is not covered by the Workers' Compensation Act. In support of this argument they cite section 440.02(13)(b)2[1] and Jay Livestock Market v. Hill, 247 So.2d 291 (Fla. 1971). The employer and carrier contend that the fact claimant was a seasonal employee does not preclude application of the principle of law that "wages earned by a claimant from employment excluded from coverage under the [Act] are not includable in determining the claimant's compensation base," Rollins Building Services, Inc. v. Thomas, 393 So.2d 665 (Fla. 1st DCA 1981), and that the decisions which hold that only wages earned in covered employment can be included in AWW should be applied to the seasonal worker provision in section 440.14(1)(c). Cf. Jaquette Motor Co. v. Talley, 134 So.2d 238 (Fla. 1961).
*1363 We recognize that a number of decisions have treated wages earned in concurrent employment excluded from coverage under the act as not includable in determining the claimant's compensation base. See, e.g., Jaquette Motor Co. v. Talley, 134 So.2d 238 (Fla. 1961) (bridge tender for railroad); Jay Livestock Market v. Hill, 247 So.2d 291 (Fla. 1971) (farm worker); State, Dept. of Corrections v. Tharpe, 413 So.2d 159 (Fla. 1st DCA 1982) (employer with less than three employees); Randell, Inc. v. Chism, 404 So.2d 175 (Fla. 1st DCA 1981) (independent contractor); Rollins Building Services, Inc. v. Thomas, 393 So.2d 665 (Fla. 1st DCA 1981) (domestic servant); Wilson v. City of Haines City, 97 So.2d 208 (Fla. 2d DCA 1957) (independent contractor). See also Tenneco, Inc. (Traveler's Insurance) v. Montana, 520 So.2d 615 (Fla. 1st DCA 1988); Anna Maria Fire Control District v. Angell, 528 So.2d 456 (Fla. 1st DCA 1988). None of these cases, however, has dealt with the seasonal worker provision in section 440.14(1)(c) and the precise issue before us. Consequently, it is necessary to analyze the underlying rationale of these cases to determine whether they should be applied to the seasonal workers provision in section 440.14(1)(c) as well.
Our analysis must begin with the premise (not only in this but every workers' compensation case) that the statutory language has controlling importance and the court decisions only construe and apply the provisions of the applicable statute to the particular facts before it. Our analysis must also focus constantly on the basic purpose of wage loss benefits, which is to compensate the employee for the loss of earning capacity attributable to an accidental injury covered by the act.
Chronologically, the first case we look to is Wilson v. City of Haines City, 97 So.2d 208 (Fla. 2d DCA 1957), wherein the court characterized the question presented as "apparently one of first impression in Florida." Id. at 209. The claimant, Wilson, was a member of the city volunteer fire department and was injured during the course of that employment. It was part-time employment that paid only a modest amount ("$1 for each fire attended and $1 for each practice drill," which amounted to an average earnings per week of $1.38), as claimant was primarily in the business of electrical contracting and operating appliance and hardware stores. The claimant contended that the deputy commissioner and the full commission applied the wrong rule and statutory law because they excluded his earnings from his employment as a contractor and store owner in calculating his average weekly wage. The court, after quoting section 440.14(5) (as it read at that time), affirmed the full commission's ruling that "the claimant was not an employee in any other field of endeavor, therefore, his sole earnings as an employee was that of a volunteer fireman"; thus, claimant could not include earnings from his endeavor as a businessman and contractor because these earnings "accrued to him as an employer and not as an employee." Id. at 210.[2] It is incorrect, therefore, to cite this decision for the broad proposition that earnings from a specific employment not covered by the Florida act cannot be included in AWW calculations, because the plain holding of the case is simply that claimant's income from his business did not qualify as wages earned as an employee and thus could not be included in his wage base.[3]
In the next case, Jaquette Motor Co. v. Talley, 134 So.2d 238 (Fla. 1961), the supreme court was presented with a slightly different aspect of the question concerning the inclusion of wages earned in a second job in the calculation of average weekly wage. The employee, Talley, earned $45 per week as a used car salesman during the day and $66 per week as a bridge *1364 tender for a railroad company at night. He suffered a disabling heart attack while working for the used car lot and sought workers' compensation benefits. The deputy commissioner calculated Talley's average weekly wage by combining the earnings from both jobs, and the full commission affirmed. Section 440.09(2), Fla. Stat. (1961) provided, "No compensation shall be payable in respect of the disability or death of an employee of a common carrier by railroad or express company engaged in intrastate, interstate or foreign commerce."[4] The employer contended that in view of this provision, it was error to include claimant's earnings as a bridge tender in the average weekly wage calculation, and the supreme court agreed. Expressly stating that this "court has not nor do we now rule on the question whether the earnings of an employee engaged in separate covered employments may be combined to compute his average weekly wage," the court concluded that such decision was unnecessary
because in the instant case employment by the railroad is specifically exempted from the operation of the Workmen's Compensation Act. Even if it could be said that limiting the wages to those received from the employment in which he was working at the time of the injury as provided by sub-section (1) of Section 440.14 was not reasonable and fair and that sub-section (3) should be applied, it is our opinion that the phrase "full time weekly wages" as used in sub-section (3) must be construed within the context of the Workmen's Compensation Act as a whole. If the phrase is so considered then it is clear that wages from an employment specifically excluded from the operation of the act may not be used as a part of the claimant's wage base.
134 So.2d at 240. Thus, the court excluded the wages earned in claimant's employment with the railroad only because of the explicit language of the statute.[5] While the court relied on Wilson in reaching its decision, Jaquette does not stand for the proposition that only earnings in employment actually covered by the act may be included in calculating average weekly wage. On the contrary, the case held that concurrent earnings from employment by the railroad could not be included because the statutory language explicitly precluded the award of compensation benefits based on such employment.
Next we come to Jay Livestock Market v. Hill, 247 So.2d 291 (Fla. 1971), the case upon which the employer and carrier strongly rely in the case before us. In Jay Livestock Market the claimant was primarily employed as a farm laborer, but he also worked approximately a day and a half a week as a general laborer at a livestock market, where he suffered a disabling injury while working. Finding that claimant's farm labor and his work at the livestock market were similar, the judge of industrial claims included claimant's earnings from both employments in calculating his average weekly wage. The full commission affirmed. The employer and carrier sought review in the supreme court, "contending that the wages earned by an employee in a concurrent employment which is excluded from the provisions of the Workmen's Compensation law, are not properly included with the wages he was earning in the employment during the course of which he was injured for the purpose of determining average weekly wages," and citing the Jaquette decision. At this time, the workers' *1365 compensation statute explicitly excluded farm workers from coverage under the act (much as the act had excluded railroad workers). A closely divided supreme court (four to three) reversed on the authority of Jaquette and Wilson, reasoning that the "[l]egislature has seen fit to exclude farm workers from the benefits of workmen's compensation" and any change in the law must come from the legislature. It is important to note the following explanation by the court:
The rule of the Wilson and Jaquette Motor cases, supra, is limited to preventing the inclusion of wages from employment or occupations not covered by the Florida Workmen's Compensation Act. Those cases and the instant case do not involve the question of whether the earnings of an employee engaged in separate covered employments may be combined to compute his average weekly wage.
247 So.2d at 292.[6] So, once again the court looked to language in the act that explicitly excluded coverage of certain classes of work or industry as the basis for its decision.[7]
The decisions of the judge of industrial relations and the commission in Jay Livestock Market were, no doubt, made in reliance on the concurrent similar employment doctrine discussed in J.J. Murphy & Son, Inc. v. Gibbs, 137 So.2d 553 (Fla. 1962), wherein the court disallowed the combining of wages earned in claimant's concurrent employment with the school board with wages earned as a book binder, finding the two occupations not sufficiently similar. In 1972, shortly after the decision in Hill, the supreme court receded from its decision in J.J. Murphy & Son, stating that "we find that the frequently inequitable results arising from the rule of that case, prohibiting a combination of wages from concurrent dissimilar employment, are not required by Florida Statutes § 440.14, F.S.A., or any other section of the Workmen's Compensation Act." American Uniform & Rental Service v. Trainer, 262 So.2d 193, 194 (Fla. 1972). The court in Trainer further stated:
If the injury occurring on the part-time job has disabled the employee from working at this full-time job, his capacity as a wage earner is impaired beyond the limits of his part-time job and his compensation should be based on the combined wages. The purpose of the Act is to compensate for loss of wage earning capacity due to work-connected injury. It is the capacity of the "whole man" not the capacity of the part-time or full-time worker that is involved.
262 So.2d at 194. The court expressly noted, however, that its decision "does not change the rule of Jaquette Motor Co. v. Talley, that wages from employment outside the operation of the Workmen's Compensation Act may not be used in determining average weekly wage under the Act." Id. at 196. But the court's characterization of "employment outside the operation of" the act should not be interpreted as meaning that the concurrent employment must be actually covered by the act to be included in AWW. For, as we have seen, the *1366 Jaquette decision was premised on a specific statutory exclusion of coverage for a specific class of work or industry.
In Rollins Building Services, Inc. v. Thomas, 393 So.2d 665 (Fla. 1st DCA 1981), decided shortly after appellate jurisdiction in workers' compensation cases was moved from the supreme court, this court held that claimant's wages from her part-time employment as a domestic servant in a private home could not be included in determining AWW because "wages earned by a claimant in employment excluded from coverage under the act are not includable in determining claimant's compensation base," citing Hill. Id. at 666. The court reasoned that "claimant's work as a domestic servant in private homes is specifically excluded from the definition of employment found in Section 440.02(1)(c), 1977 Florida Statutes." Ibid. The court did note its "sympathy with claimant's argument that the purpose of the compensation act is to compensate for loss of wage earning capacity due to a work connected injury and that what is involved is the capacity of the `whole man' not the capacity of the part time or full time worker," but felt compelled to follow the cited precedent. 393 So.2d at 666-67.
In Randell, Inc. v. Chism, 404 So.2d 175 (Fla. 1st DCA 1981), this court reviewed the determination of AWW under section 440.14(1)(a), Florida Statutes (1979), and held that a construction worker's wages in his covered employment could not be aggregated with earnings as an independent contractor because the act explicitly excluded independent contractors from coverage, citing section 440.02(2)(d)1, Jaquette, and Rollins. The court in Randell also excluded wages from claimant's employment by his girlfriend because it found that she employed only one person, claimant, and such employment was explicitly excluded from coverage by section 440.02(1)(b)2, which defines the term "employment" as including all "private employments in which three or more employees are employed by the same employer." Id. at 177. The rationale for excluding wages from a class of work or industry that may be covered by the Workers' Compensation Act is not explained, and none of the cited cases interpreting section 440.02(1)(b)2 involved whether wages earned in that employment should be included in calculating AWW. In one of the cited cases, Allen v. Estate of Carman, 281 So.2d 317 (Fla. 1973), the court held that while an employer with one employee is normally excluded from coverage under the workers' compensation act by definition in section 440.02(1)(b)2, nevertheless such coverage could be effected by the employer's election to be covered under section 440.04. In another, Sudler v. Sun Oil Co., 227 So.2d 482 (Fla. 1969), the court reversed the judge's ruling that no workers' compensation coverage existed because the employer did not have three or more full-time employees, holding that three or more regular part-time employees would satisfy the requirements of the act. No compelling reason was stated by the court in Randell for excluding wages from a class of employment or industry that could be covered by the act depending on the employer's election, and we are aware of no compelling rationale requiring this result. Rather, it would appear that in deciding to exclude from AWW calculations of monies earned in an industry or a class of work that may be included within the coverage of the act depending on the conduct of the employer, the court misconceived and misapplied the rationale of the prior cases that had been premised on specific statutory provisions mandating total exclusion of a particular class of work or industry.
In State, Department of Corrections v. Tharpe, 413 So.2d 159 (Fla. 1st DCA 1982), this court held that the deputy commissioner erred in including in a claimant's average weekly wage the money he earned as a caretaker for a weekend retreat. Citing sections 440.02(1)(c)2, -(1)(c)1, and -(1)(b)2, Florida Statutes (1979), the court found that the claimant's concurrent wages were earned in employment excluded from coverage under Chapter 440 because the work was either farm work or domestic work (which are explicitly excluded from coverage by the statute), but also added that in any event, the earnings were derived from *1367 work for an employer with fewer than three employees (which may or may not involve an excluded class of work). This latter ruling was based on Randell without further explanation.
Most recently, in Anna Maria Fire Control District v. Angell, 528 So.2d 456 (Fla. 1st DCA 1988), the claimant was injured in the course of his duty as a volunteer fireman with earnings of $20 per week. In determining AWW under section 440.15(5)(b)(1), the deputy commissioner included wages from claimant's concurrent employment as an electrical subcontractor, a business he operated as a sole proprietorship with two employees. He had not elected coverage under the act pursuant to section 440.05. Citing to the above cases and Florida Power & Light Co. v. Monks, 407 So.2d 1081 (Fla. 1st DCA 1982), this court reversed the deputy commissioner's ruling and held that claimant's concurrent employment was not earned as an "employee" covered by the act because sole proprietors are specifically excluded from coverage unless they elect to be covered, which had not happened. The court noted, however, that:
This is not by virtue of his [claimant's] failure to have worker's compensation insurance coverage, since such coverage is irrelevant to whether the Act covers specific employment. Tenneco, Inc. v. Montana, 520 So.2d 615 (Fla. 1st DCA 1988).
528 So.2d at 458. Once again, the court did not premise its decision on a statutory provision explicitly excluding a class of work or industry, but solely on the factual circumstances showing that coverage under the act had not been effected by the employer's election.
In Tenneco, Inc. v. Montana, 520 So.2d 615 (Fla. 1st DCA 1988), this court held that the claimant's status as an officer and part owner of the corporation that had allowed workers' compensation insurance to lapse by failing to pay premiums did not preclude inclusion of claimant's concurrent earnings with that corporation in the calculation of AWW, stating:
The authorities relied upon by appellants deal with the principle that concurrent wages earned in types of employment which are excluded from coverage under the Workers' Compensation Act cannot be included in the AWW calculation... . But whether an employer acquires workers' compensation insurance  or once acquired, whether the employer keeps such insurance in force  is unrelated to whether the Act covers that employment. We hold that whether a claimant was covered by a workers' compensation insurance policy in his concurrent employment is irrelevant to whether his concurrent earnings are includible in the AWW calculation.
520 So.2d at 615-16 (citations omitted).
We are unable to discern from the foregoing decisions any clear and consistent legal theory that persuasively justifies excluding any of an employee's earnings from the calculation of AWW under the seasonal worker provision in section 440.14(1)(c), whether or not all such earnings were from employment in a class of work or industry covered by the workers' compensation act. More often than not, it appeared that the courts were deploring the obvious inequity that resulted from not including certain concurrent earnings in the calculation of AWW under the statutory provision involved. For the most part, however, the decisions of this court have not followed the philosophy of the act best expressed by the supreme court in American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972), where it said:
We are aware of the arguments of "unfairness" to the employer and his carrier who may be called upon to provide compensation in excess of wages actually earned by the part-time worker. This argument would apply equally to the employer-carrier of the part-time worker who holds a concurrent similar full-time job, but this view has not prevented the combination of wages from similar employments. The problem is analyzed by Larson as follows:
"Of course, it can be argued that it is unfair to one employer and his carrier to burden them with a liability, out *1368 of proportion to his own payroll and premium computed thereon, arising from a risk not associated with his type of employment.
* * * * * *
"On closer examination, however, the primary objection ... does not seem to be the argument that the insurer has not had a chance to collect a premium on the entire wage so adopted, since this argument applies as strongly to related as to unrelated concurrent jobs. The objection, then, must be that one industry may ultimately be required to bear part of the burden of an injury produced by another. This may or may not be true in a particular case, but the harm done is so remote and theoretical that it hardly seems to offset the very real injustice of relegating a disabled man accustomed to full earnings to a benefit level below that of destitution because of the circumstance that he happened to earn his living in two `dissimilar' jobs." (e.s.)
262 So.2d at 194-95. Significantly, the court also stated:
We also note that in determining a claimant's loss of wage-earning capacity, his ability, after the accident, to earn in either or both of his concurrent employments will be considered as bearing on the extent of disability under Florida Statutes § 440.02(9), F.S.A., which provides:
"(9) `Disability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." (e.s.)
Id. at 196.
The supreme court decisions in Jaquette Motor and Jay Livestock Market, ruling that concurrent earnings from such employments could not be included in AWW calculations, were predicated on specific statutory exclusions of certain classes of employment from coverage under the act and were based on the court's construction of explicit language of the pertinent subsections of section 440.14. In view of subsequent amendments to chapter 440, it is doubtful that the same results would have been reached if those cases were decided today. Yet this court, beginning with Randell, has seemingly extended the rationale of the supreme court decisions beyond their obvious limitations by excluding from AWW calculations of wages earned in employment that has not been expressly excluded from the act's coverage, but was not covered only because of the employer's election or limited number of employees. The notion that wages earned in a class of work or industry expressly excluded from the operation of the workers' compensation act should be excluded from AWW calculations may have some rational basis in the statutory language and manifest legislative intent, but to exclude from AWW wages earned in a class of work or industry covered by the act solely on the basis that the claimant's particular concurrent employment is not covered due to the employer's election or limited number of employees has no rational basis in any statutory language found in chapter 440. Since the underlying purpose of the workers' compensation act is to protect an employee's loss of wage earning capacity measured by his past wages and to place the financial burden of such loss upon the industry in which claimant was working when injured,[8] it is highly questionable that this court's decisions excluding wages from employments that may be covered under the act have properly construed the statutory language and properly applied the rationale of the decisions of the supreme court. But we need not consider receding from any of those decisions at this time to decide this case, because none of them involved the construction and application of section 440.14(1)(c), defining AWW for seasonal workers.
*1369 Section 440.14(1)(c), Florida Statutes (1985), states in part:
If an employee is a seasonal worker and the foregoing method cannot be fairly applied in determining the average weekly wage, then the employee may use, instead of the 13 weeks immediately preceding the injury, the calendar year or the 52 weeks immediately preceding the injury. The employee will have the burden of proving that this method will be more reasonable and fairer than the method set forth in paragraphs (a) and (b)... .
This section was added to the compensation statute in 1974 to permit the use of a basis other than the "13 weeks employment immediately preceding the injury" in calculating a seasonal worker's AWW. Ch. 74-197, § 8, Laws of Fla. The dominant emphasis, we believe, must be placed on the evident statutory intent to provide a "more reasonable and fairer" method for determining AWW than is afforded in the subsections immediately preceding subsection (c). We observe nothing in the statutory language of that subsection that mandates exclusion of any other earnings, regardless of the source or coverage under the act. On the contrary, when one considers that the seasonal worker statute is designed to protect farm workers such as migrant laborers, whose income for a given year will no doubt be earned in part in Florida and in part in other states as they follow the maturing crops, we agree with the deputy commissioner that such workers should not have the burden of proving that his or her employment in each instance was covered by the workers' compensation act. To hold otherwise would raise serious questions about the meaning and effect of the Florida Statutes. For example, would such employment have to be covered by the Florida act only, or be subject to the changing provisions of each state's act as the migrant workers progress from state to state? In short, we find no compelling policy reason to adopt the employer and carrier's position that the deputy commissioner incorrectly included the wages claimant earned in noncovered employment in calculating claimant's AWW.
The employer and carrier also contend that claimant worked during the 52-week period as an independent contractor. However, irrespective of whether this would affect the inclusion of such earnings under our present decision, this contention is not supported by the record. The only testimony regarding this issue was that of claimant's wife, who stated that she and her husband had some control at some of their jobs during the 1985 calendar year. She also characterized all the 1985 employment as a series of one-time jobs. This is not sufficient to support the legal conclusion that claimant was an independent contractor excluded from the operation of the workers' compensation act.
Finally, we hold the deputy commissioner did not err in awarding taxable costs and in reserving jurisdiction to determine entitlement and amount of attorney's fees.
AFFIRMED.
WENTWORTH and BARFIELD, JJ., concur.
NOTES
[1] Section 440.02(13)(b)2 defines "employment" to include "[a]ll private employments in which three or more employees are employed by the same employer."
[2] The full commission distinguished the situation where a voluntary fireman was a carpenter earning wages doing carpentry work, stating that such wages would be included with the earnings as a fireman in calculating the average weekly wage; however, the court expressed no opinion on this analogy. 97 So.2d at 210.
[3] More recent cases have recognized that some portion of a business owner's income may indeed be treated as earnings as an employee. See City of Hialeah v. Jimenez, 527 So.2d 936 (Fla. 1st DCA 1988).
[4] This provision was subsequently amended in 1974 by ch. 74-197, § 5, Laws of Fla., to provide:

No compensation shall be payable in respect of the disability or death of any employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Worker's Compensation Act, or the Jones Act.
Section 440.09(2), Fla. Stat. (1987).
[5] It is doubtful that the same result would be reached today in view of the change in language of section 440.09(2), as now that language excludes payment of compensation benefits only if the claimant's disability or death is covered by one of the enumerated federal compensation acts. Under this language, if the injury occurred in employment covered by the state act, a fortiori there would be no coverage under a federal act because the state and federal acts are not overlapping, and the exclusion of wages would not be applicable.
[6] The dissent attempted to distinguish the cited decisions on the premise that each of them involved employments that were dissimilar and not in the same industry, while the claimant Hill's work at the livestock yard and as a farm laborer was similar, as found by the judge and commission. The dissent made a most pertinent observation concerning the purpose of the act, however, that should be heeded in deciding this case:

Total disability terminates a laborer's total livelihood, just as effectively for a "full-time" job as laborer pitching hay for livestock in his regular employment on the farm, as for pitching it at the livestock market in his part-time work. This is what has occurred here. The workman's capacity to earn is ended in both jobs. The grocer and landlord make no distinction as to his source of income when it is insufficient to pay for his food and rent. Is he to be denied consideration being given to his total income which has been lost, because it is derived in two portions? We deal with the "economic man," says Alpert in his comprehensive work, "Florida Workmen's Compensation Law," § 11:13 (p. 352). The facts before us present a test as to whether the Court is going to give meaning to this fact of life.
247 So.2d at 293.
[7] The result in the Jay Livestock case would be different today as the workers' compensation act no longer excludes farm workers as a specific class of work not covered under the act.
[8] American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972); Witzky v. West Coast Duplicating & Claims Center, 503 So.2d 1327 (Fla. 1st DCA 1987) (AWW is simply a method of establishing the value of an employee's lost ability to earn future wages during the period of disability attributable to the covered industrial accident).