BOOTH, Judge.
This cause is before us on appeal from a denial of wage-loss benefits.
Claimant, age 54, had two jobs at the time of his injury: he worked full-time for the Veterans Administration as an accountant, earning $370.53 weekly, and part-time, 20 to 30 hours a week, for Carolina Freight Carrier Corporation loading freight and earning $254.55 weekly. Only his job with Carolina Freight was covered employment under the Workers’ Compensation Act.
On October 22, 1986, claimant suffered a compensable injury while working for Carolina Freight. He was able to return to his accounting job after six weeks and continues to earn the same wages at that job as he earned before the injury. He returned to Carolina Freight in March 1987 and worked until November 14, 1987. He has not acquired another job to replace his employment with Carolina Freight. The parties have stipulated that claimant reached maximum medical improvement on October 14, 1987, with a permanent physical impairment.
The judge of compensation claims ruled that claimant’s earnings from his employment with the Veterans Administration was not covered under the Act and therefore was not includable in the determination of the AWW. That ruling is not challenged here. The judge also ruled that the earnings excluded from the preinjury AWW were included in postrecovery earnings. The net result of these rulings is the judge’s finding that there was no wage loss.
In Parrott v. City of Fort Lauderdale, 190 So.2d 326, 329 (Fla.1966), the Florida Supreme Court held:
If earnings from concurrent employment, engaged in by claimant at the time of the injury, are excluded from determination of the average weekly wage, i.e., pre-in-jury earning capacity, earnings from that same employment should also be excluded from the determination of post-recovery earning capacity. This statement is subject, however, to the proviso that to the extent that the claimant, after injury, enlarges his participation in the concurrent employment as a substitute for the employment in which he was injured, then such enlarged participation may be considered in determining post-recovery earning capacity.
Thus, the Florida Supreme Court in Par-rott held that where noncovered, concurrent earnings are excluded from the determination of AWW, those same earnings must also be excluded in the determination of postrecovery earning capacity. That rule is subject only to an exception not applicable here, that claimant’s increased participation in the concurrent, noncovered employment after the accident can be considered.
The Florida Supreme Court in the Par-rott case, expressly rejected the approach used by the judge in the instant case, stating (190 So.2d at 329):
[T]o determine loss of wage earning capacity by comparing the average weekly wage, from which earnings from concurrent employment have been excluded, with post-recovery earning capacity, in which earnings from the same concur *526 rent employment are included, obviously produces an unfair result. It does not fairly compensate the employee for loss of wage earning capacity which the statute is designed to do.
The Parrott case has not been overruled, distinguished, or restricted in any way on this issue. The intent and purpose of the Act is the same now as it was at the time of the Parrott decision. The Act is to be liberally construed to protect the employee and to place the financial burden of his loss of wage-earning capacity measured by his past wages upon the industry in which he was working when injured. DeAyala v. Florida Farm Bureau Casualty Ins. Co., 543 So.2d 204, 207 (Fla.1989); Iley v. Linzey, 531 So.2d 1361, 1368 (Fla. 1st DCA 1988), review denied, 542 So.2d 989 (Fla.1989). Section 440.15(3)(b), Florida Statutes, in effect at the time of the accident herein, provides in part:
440.15(3)(b) Wage-loss benefits.—
1. Each injured worker who suffers any permanent impairment ... may be entitled to wage-loss benefits_ Such benefits shall be based on actual wage loss. Subject to the maximum compensation rate as set forth in s. 440.12(2), such wage-loss benefits shall be equal to 95 percent of the difference between 85 percent of the average monthly wage and the salary, wages, and other remuneration the employee is able to earn after reaching maximum medical improvement; however, the monthly wage-loss benefits shall not exceed an amount equal to 66% percent of the employee’s average monthly wage at.the time of the injury....
2. The amount determined to be the salary, wages, and other remunerations the employee is able to earn after reaching the date of maximum medical improvement shall in no case be less than the sum actually being earned by the employee, including earnings from sheltered employment.
Appellee contends subsection (3)(b), supra, as amended effective July 1, 1979, requires a different result from that prescribed in Parrott. There is no case authority supporting that contention,[1] and we conclude that it is without merit. Subsection (3)(b) does not address the question of covered and noncovered concurrent employment. The only nonroutine type of postin-jury earnings specified in subsection (3)(b)2 for inclusion are “earnings from sheltered employments.” No mention is made of earnings from noncovered concurrent employment. Assuming such a provision could validly be added to the statute, it was not done. The law remains as set forth in Parrott. Wages from concurrent, noncov-ered employment excluded from AWW are also to be excluded from postinjury earnings. Only in this way can actual wage loss in the covered employment be determined. That rule is subject to the exception stated in Parrott for claimant’s increased participation in the concurrent, noncovered employment after the injury.
The judge also erred in imposing a good-faith work search requirement on claimant, in that the letter sent by the employer did not inform claimant of his obligation to conduct a good-faith work search and was therefore legally insufficient. § 440.185(2)(e), Fla.Stat. (Supp. 1986). Once an employer and carrier are put on sufficient notice of a claim, they have an affirmative obligation to inform the claimant of his rights and obligations under the Act, including the obligation to conduct a good-faith work search. Wilson v. Harris Corporation, 557 So.2d 50 (Fla. *527 1st DCA 1989); see also Rios v. Fred Teitelbaum Construction Company, 522 So.2d 1015 (Fla. 1st DCA 1988); Coq v. Fuchs Baking Company, 507 So.2d 138 (Fla. 1st DCA 1987). The failure to notify claimant of the obligation to perform a work search after terminating benefits excuses the work search. DeFrees v. Colt and Dumont/Hit Sales, 483 So.2d 848 (Fla. 1st DCA 1986).
Accordingly, the trial court’s order is reversed and remanded for further proceedings consistent herewith.
NIMMONS and ZEHMER, JJ., concur.

. Cases cited by appellee are distinguishable: Anna Maria Fire Control District v. Angell, 528 So.2d 456 (Fla. 1st DCA 1988); Kemp v. Miami Quality Concrete Company, Inc., 410 So.2d 199, 200 (Fla. 1st DCA 1982), American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla.1972); Jacquette Motor Co. v. Talley, 134 So.2d 238 (Fla.1961).
The Angelí case, supra, was relied on by the judge below, who was also the judge in that case. In Angelí, the claimant raised at the hearing level an issue similar to that raised here. However, on appeal, the only contention made and addressed by this court in its opinion was the judge’s erroneous inclusion of concurrent, noncovered earnings in AWW. The exclusion of such wages from postrecovery earnings was not considered or ruled on.