397 So.2d 432 (1981)
Tommy C. SIMPKINS, Appellant,
v.
Tally WATSON and Florida Farm Bureau, Appellee.
No. XX-206.
District Court of Appeal of Florida, First District.
April 28, 1981.
*433 Thomas W. Davis of Barton & Cox, Gainesville, for appellant.
Jack A. Langdon of Jones & Langdon, Gainesville, for appellee.
ERVIN, Judge.
Simpkins, the claimant below, contends that the deputy commissioner incorrectly computed his average weekly wage, averaging his weekly wages earned from his employer from a period spanning the 25th week through the 12th week prior to his industrial injury. Simpkins further contends that this error resulted in an inaccurate compensation rate. We agree and reverse with instructions.
The claimant regularly worked for his uncle during the active portion of the year  January through October  and obtained higher paying outside employment during the farm's "slow time." The claimant followed this work pattern in 1979 by working until October 28 for his uncle. He then accepted a higher paying construction job at which he worked for about three months. The claimant then returned to work for his uncle to plow his fields. He had only been back on the job for about 15 minutes when on January 19, 1980, he suffered a compensable accident.
The uncle submitted a notice of injury form which stated that the claimant was to work on a 60-hour week at $2.50 per hour, and to receive $20.00 per week in meals and $35.00 in lodging from his uncle. The record is somewhat unclear as to whether the 60-hour work-week was an average figure. The uncle testified at the hearing below that because of rain delays, machine failures, etc., that the claimant, if he had not been injured, would have actually worked a lesser number of hours per week. However, in one portion of the record the uncle noted that the claimant had sometimes worked more than 10 hours a day in the past.
The uncle, the claimant, and a part-time employee were the only laborers on the farm.
The claimant took the position at the hearing that based on the information in the notice of injury form that his average weekly wage was $205.00. The deputy commissioner, however, arrived at an average weekly wage of $139.65, and a corresponding compensation rate of $66.77, by averaging the claimant's weekly wage statements from July 30, 1979 to October 28, 1979, which was the basis from which the employer/carrier had been paying temporary total benefits since the inception of the claim.
The deputy commissioner's method of computing the claimant's average weekly wage is not sanctioned by Section 440.14, Florida Statutes (1979), because the period of time used to arrive at the average weekly wage figure, 13 weeks, began on the 25th week before the claimant's injury and ended on the 12th week before the injury. The correct averaging period is "substantially the whole of 13 weeks immediately preceding the injury." Fla. Stat. 440.14(1)(a) (e.s.). Subparagraph (a) of that section defines "substantially the whole of 13 weeks" as meaning "not less than 90% of the customary full-time hours of employment" within the 13-week period. Therefore, because the claimant only worked one week during the statutorily provided 13-week period, Section 440.14(1)(a) is inapplicable. Additionally, Section 440.14(1)(b)  permitting the average weekly wage to be determined (if the employee did not work for 13 weeks before the injury) by comparing the wages of a similar employee who has worked the requisite period of time  is inapplicable because the record established that a "similar employee" did not exist. Nor did the claimant opt to be characterized as a "seasonal employee" pursuant to 440.14(1)(c), authorizing another means of calculating the average wage for such employee.[1] Therefore, the deputy commissioner *434 was required to determine the claimant's average weekly wage on the basis of wages, whether "full-time" under subsection (d), or "part-time" under subsection (f). See Desfosses v. Carrillon Hotel, supra, note 1 and Penuel v. Central Crane Service, 232 So.2d 739 (Fla. 1970).
In its interpretation of subsection (d), Penuel observed that an employee's "full-time wage" may be determined "by the `contract of employment'" or by "`actual earnings,' according to circumstances of each case." 232 So.2d at 742. There, the claimant's average weekly wage was ascertained by referring to his anticipated earnings from his contemplated contract of employment, which yielded a higher average than the composite of the claimant's actual earnings the week prior to his injury, citing Rainey v. Lafayette Grill, Inc., 2 FCR 208 (1956), with approval. In Rainey, the IRC, after noting that the claimant "had not earned a dime" on the job before his accident, used the claimant's contemplated full-time weekly wage.
In summary, it appears that the average weekly wage must be computed on a prospective basis when the legislatively prescribed retrospective methods, the "13-week" and "similar employee" methods, provided in Sections 440.14(1)(a) and (b) respectively, are not applicable. Averaging past earnings not coinciding with the consecutive 13-week period established in Section 440.14(1)(a) has been forbidden by the IRC. See Imperial Frame Corp. v. Santos, IRC Order 2-3043 (1976).
Since the claimant was injured almost immediately after he resumed working for his uncle, there were no actual earnings in evidence before the deputy commissioner. Thus, his prospective earnings represented the only applicable test to measure his average weekly wage.
The order of the deputy commissioner is reversed and the cause is remanded with directions that claimant's average weekly wage be recomputed in accordance with the procedure prescribed by Section 440.14(1)(d).
McCORD and ROBERT P. SMITH, Jr., JJ., concur.
NOTES
[1] Subsection (c) on its face appears to give the employee alone the option of being treated as a seasonal employee. This interpretation appears consistent with that given 440.14(1)(c) by Desfosses v. Carrillon, 389 So.2d 228 (Fla. 1st DCA 1980), and Kerce v. Coca-Cola Company  Foods Division, 389 So.2d 1177 (Fla. 1980).