405 So.2d 475 (1981)
FOUR QUARTERS HABITAT, INC., and Aetna Casualty and Surety Company, Appellants,
v.
Brian MILLER, Appellee.
No. ZZ-109.
District Court of Appeal of Florida, First District.
October 29, 1981.
*476 Lewis M. Ress and Mark J. Mintz of Ress, Gomez, Rosenberg & Howland, North Miami, for appellants.
Eugene E. Williams and Mark L. Zientz of Williams & Zientz, Coral Gables, for appellee.
ERVIN, Judge.
In this workers' compensation action, the employer/carrier (e/c) appeals from the order of the deputy commissioner (D.C.) awarding claimant (1) temporary total disability (TTD) benefits from August 13, 1979 (the date of the accident), through July 11, 1980, the date determined to be that of maximum medical improvement (MMI), at a compensation rate of $190.87 per week based on an average weekly wage (AWW) of $286.15, (2) attorney's fees and (3) penalties. The appellant raises four points on appeal. We agree that all of the points require either reversal or remand.
The first issue asks whether the D.C. erred in awarding claimant TTD benefits *477 beyond the date the e/c stipulated claimant was entitled to TTD benefits, or March 5, 1980.[1] The record establishes that claimant's treating physician, Dr. Mims, on February 19, 1980, advised claimant that he could then perform light work. The record shows that the claimant, following this examination, made only one attempt to seek work with his former employer by placing a call to him in April, 1980, and asking if he could resume employment once he was able to work. Yet he never tested his employability by attempting to resume his former work, or by seeking other employment. It has been repeatedly held that it is error to award TTD benefits where there is either no medical evidence of claimant's inability to work, or no conscientious effort is made by the claimant to return to work. Action Pool Builders, Inc. v. Grant, IRC Order 2-3743 (March 23, 1979); Mendivil v. Tampa Envelope Manufacturing Company, 233 So.2d 5 (Fla. 1970); Walter Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981); Tallahassee Coca-Cola Bottling Company v. Parramore, 395 So.2d 275 (Fla. 1st DCA 1981); Stewart-Decatur Security v. Kropp, 396 So.2d 256 (Fla.1st DCA 1981); McDonnell Douglas v. Holliday, 397 So.2d 366 (Fla. 1st DCA 1981). In Walter Glades Condominium v. Morris, supra, we reversed an order awarding TTD benefits on a record showing that claimant, during the period of asserted disability, made one effort to return to work, and was told by her employer to come back when she was well. We held that in the absence of medical evidence relating to her inability to work, claimant was obliged to test her ability to work, and that her testimony stating only that she was unable to work did not meet the requirement of an adequate work search.
Although Dr. Mims testified that the claimant should seek only light work, those directions did not excuse the claimant from the rule that he was obliged to search for work within his physical limitations. See T.G. Lee Foods, Inc. v. Walker, 395 So.2d 252 (Fla. 1st DCA 1981); Stewart-Decatur Security v. Kropp, supra. Since there was no such search, the award is therefore reversed and the case is remanded with directions that an award of TTD be entered consistent with the time frame stipulated by the e/c.
Appellant next argues that the D.C. erred in computing claimant's AWW by selecting the method provided in Section 440.14(1)(a), Florida Statutes (1979)[2], instead of subsection (b), pertaining to the similar employee method of computation,[3] and that the D.C. erred also in accepting claimant's testimony over the e/c's representative.
Claimant testified that for ten weeks prior to his employment by Four Quarters Habitat, he had worked for another employer at a job similar to his later occupation with Four Quarters at $7.50 per hour for a 40-hour work week. After leaving that employment, he then worked for three-and-a-half weeks as a carpenter with Four Quarters at a rate of $6.00 per hour for 40-hours per week. The claimant, however, offered no testimony of the wages he actually received from either employer. In determining the AWW, the deputy, following the provisions of Section 440.14(1)(a), took a weighted, combined average of claimant's presumed income from the two employers for the 13-week period preceding the accident, thereby arriving at the figure of $286.15 per week. In so doing, it was necessary for him to reject the testimony of the employer's representative that claimant had worked for less than one full day as being unreliable because it conflicted with the *478 employer's time records revealing that claimant had actually worked a total of 13 1/2 hours during the week in which the injury occurred, as well as to reject the employer's evidence relating to the similar employee method. Such evidence, consisting of payroll records of three employees who allegedly performed similar labors, was discarded because records of two of the employees reflected that they did not work 90% of the requisite statutory period, while the earnings of the third employee were not accepted because he was not paid the same hourly wage rate as the claimant.
Although the D.C. unquestionably has the informed discretion to reject the employer's evidence and accept that of claimant's, nevertheless, claimant did not offer any testimony of the actual wages he earned from the employer. As a consequence, the D.C. had no basis for applying the wage-averaging method found in subsection (1)(a), requiring that the AWW "shall be one-thirteenth of the total amount of wages earned in such employment during the said 13 weeks." (Emphasis supplied)
The similar employee method described in subsection (1)(b) is also inapplicable because the record establishes that claimant had worked in the same type of employment for more than 13 weeks preceding the injury. See Whittle v. Whittle & Sons Janitor Service, 395 So.2d 304 (Fla. 1st DCA 1981). The only subsection of the statute which could have conceivably applied was subsection (4), relating to the full-time weekly wages of an injured employee as established by the contract of employment. Cf. Simpkins v. Watson, 397 So.2d 432 (Fla. 1st DCA 1981). Therefore the D.C. should have only used the contract of employment method.
Appellant next argues that the D.C. incorrectly assessed a reasonable attorney fee in favor of claimant's counsel since the new statute, Section 440.34(2), Florida Statutes (1979), permits fees in only the following situations: (a) in cases where the claimant asserts a claim for medical benefits only, (b) in cases where the deputy makes a specific finding that the e/c acted in bad faith, and (c) in cases where the e/c denies that an injury occurred for which compensation benefits are payable and the claimant prevails on the issue of compensability.
We agree that there is no statutory basis on which an attorney fee could have been ordered. Sub-paragraph (a) is not applicable to the facts before us because the claim requested compensation benefits in addition to medical benefits, nor is sub-paragraph (b) applicable because the D.C. made no specific finding of bad faith, and finally sub-paragraph (c) is inapplicable because the e/c did not deny that the claimant suffered a compensable injury, but controverted only the right to TTD benefits after March 5, 1980. Once an e/c admits an accident and pays some disability benefits, but denies that others are due, an attorney's fee is not awardable under § 440.34(2)(c), Florida Statutes (1979). Ardmore Farms, Inc. v. Squires, 395 So.2d 268 (Fla. 1st DCA 1981); Walt Disney World Company v. May, 397 So.2d 1003 (Fla. 1st DCA 1981). But cf., Dolphin Tire Company v. Ellison, 402 So.2d 36 (Fla. 1st DCA 1981), permitting attorney's fees where the employer denied that catastrophic loss occurred.
It should be noted that Dolphin construed the e/c's controversion of the claim for catastrophic loss, provided in Section 440.15(2)(b), Florida Statutes (1979), as a denial of a catastrophic injury, thereby authorizing an award of attorney's fees pursuant to Section 440.34(2)(c). It should also be observed that the Dolphin court cautioned that its decision should not be construed as permitting the assessment of fees in those instances in which the e/c admits the compensability of the injury, but contests only a claim for benefits incidental to the injury, such as the amount of the AWW.
Appellant finally urges that the D.C. erred in imposing 10% statutory penalties on all unpaid compensation benefits which were not paid when due. The D.C.'s order does not reveal why a penalty was imposed. Moreover, there is nothing in the record showing that the claim had been controverted by the employer within 21 days, as required by Section 440.20(6); however, *479 in that portion of the order awarding attorney's fees, it was stated that the e/c controverted the claim for additional benefits. It is true that the e/c carries the burden as to whether it has sufficiently controverted a claim. See G & L Motor Corp. v. Taylor, 182 So.2d 609 (Fla. 1966). Nevertheless, the D.C. should not impose a penalty if the employer has a legitimate excuse for not controverting. See Section 440.20(7), and Burnup & Sims, Inc. v. Cohran, IRC Order 2-2950 (April 21, 1976). Finally, the D.C. has the same obligation to state the ultimate facts and conclusions supporting the imposition of a penalty as he has in regard to any other award of benefits. See Rayzor v. Mobley's Remodeling, IRC Order 2-3351 (February 14, 1978).
Therefore, on remand, the D.C. should clarify his order by stating explicitly whether the e/c sufficiently controverted the claim, or, if the claim was not controverted within the requisite statutory time, whether the employer had a valid excuse for not controverting it within 21 days after the e/c had acquired knowledge of the alleged injury.
To conclude, the award of TTD benefits beyond March 5, 1980, or the date of the e/c's stipulation, is reversed, as is the award of reasonable attorney's fees to claimant's attorney. Both the method of computing the AWW on which the amount of TTD benefits was determined, and the award of penalties is reversed, and they are remanded for further proceedings consistent with our opinion.
MILLS and LARRY G. SMITH, JJ., concur.
NOTES
[1] This was the date one of the examining physicians gave as the date that claimant was then not only able to return to work, but had also previously been able to return to work.
[2] Providing generally that the AWW shall be one-thirteenth of the total amount of wages earned in the employment for the same or another employer during substantially the whole of the 13 weeks immediately preceding the injury.
[3] Providing that if the injured employee shall not have worked in such employment for 13 weeks preceding the injury, the wages of a similar employee in the same employment during the requisite time shall be used in determining the AWW.