694 So.2d 136 (1997)
WAL-MART STORES and Claims Management, Inc., Appellants,
v.
George CAMPBELL, Appellee.
No. 96-2764.
District Court of Appeal of Florida, First District.
June 2, 1997.
*137 William H. Rogner and Rex A. Hurley, of Hurley & Rogner, P.A., Orlando, for Appellants.
Mark B. Tipton, Ocala, for Appellee.

REVISED OPINION
BARFIELD, Chief Judge.
The employer and servicing agent (E/SA) appeal a workers' compensation order awarding benefits based on an increased average weekly wage (AWW) due to concurrent employment, asserting that the judge of compensation claims (JCC) used an improper method of calculating the increased AWW under section 440.14(1), Florida Statutes (Supp.1990). We affirm.
The claimant was injured in December 1990 while performing his full-time job at Wal-Mart, at which he had worked for substantially the whole of thirteen weeks immediately preceding the accident. For six weeks immediately preceding the accident, he had also worked part-time at Krystal. The accident was accepted as compensable and benefits were paid based on an average of the claimant's previous thirteen weeks of employment at Wal-Mart (the original AWW). The parties differed with respect to the proper method of calculating the increase in AWW due to the concurrent employment at Krystal. The claimant suggested dividing the total amount earned at Krystal by the number of weeks actually worked at Krystal and adding that figure to the original AWW. The E/SA advocated dividing by thirteen the total amount earned at Krystal and Wal-Mart during the thirteen-week period contemplated by section 440.14(1)(a).
The JCC used the method suggested by the claimant, quoting American Uniform and Rental Service v. Trainer, 262 So.2d 193 (Fla.1972): "The purpose of the (Workers' Compensation) Act is to compensate for loss of wage earning capacity due to work-connected injury. It is the capacity of the `whole man' not the capacity of the part-time or full-time worker that is involved." He also cited Vegas v. Globe Security, 627 So.2d 76 (Fla. 1st DCA 1993), rev. den., Globe Security v. Vegas, 637 So.2d 234 (Fla.1994), as having "reaffirmed the foregoing concepts," and Gomez v. Murdoch, 520 So.2d 600 (Fla. 1st DCA 1987), for the proposition that "a critical inquiry must be whether the claimant, during the 13-week period, held concurrent employment which was expected to continue in the future." He found that in the instant case, as in Gomez, "the fact that the Claimant intended to continue working at his concurrent employment was, and must be, accorded significant weight." He concluded that under the circumstances presented:
... the only consistent result of attempting to determine the proper AWW of the Claimant is to adopt the method of calculation and the figures suggested by the Claimant, since the goal is to utilize "the fairest and most reasonable way to determine the average weekly wage ..." Florida Cast Stone v. Dehart, 418 So.2d 1271, 1272 (Fla. 1st DCA 1982).
Although this specific method of determining the AWW has not been addressed by the District Court of Appeal, First District (1st DCA), that same court has stated that a judge of compensation claims (JCC) is "not a cipher or a calculating robot, but (should be) a judge of claimant's unique employment situation." Id. In this unique situation, and with particular weight given to the fact that the Claimant's concurrent employment was likely to continue beyond the date of his work injury, I find that the Claimant's AWW should be $211.38.
The E/SA filed a motion for rehearing, citing Quality Painting v. Harrison, 529 *138 So.2d 1172 (Fla. 1st DCA 1988), as "directly on point" and stating the holding in that case as: "[W]here the claimant works the full 13 weeks in one of the employments the approach is to combine all wages and divide by 13." In Quality Painting, the claimant had been working full-time as a cashier during the thirteen weeks prior to her accident. Because she experienced seasonal layoffs at this job, she had begun a three-day trial period as a painter, in which employment she anticipated working during her next layoff. The accident occurred on the first day of this concurrent employment. Both parties disagreed with the JCC's calculation of AWW based on the claimant's thirteen weeks earnings as a cashier plus three days prospective earnings as a painter. On appeal, the court found that her earnings for the thirteen-week period properly included her earnings as a painter for the one day she actually worked, holding that section 440.14(1)(a) was the proper method for calculating AWW where the concurrent employment is dissimilar, and citing Trainer and Watson. There was no evidence that the claimant in Quality Painting intended to continue the concurrent employment beyond the three-day trial period. At the hearing on the motion for rehearing in the instant case, the claimant's attorney distinguished Quality Painting, noting: "In the present case, the claimant intended to work both jobshad worked both jobs and there is no evidence to suggest that he wouldn't have been able to continue working both jobs." The JCC denied the motion, noting his role of determining a fair and reasonable estimate of the claimant's earning capacity.
The parts of section 440.14(1) pertinent to our discussion of the issue in this case have been renumbered, but have not been substantially altered over the past fifty years. The 1990 version of the statute applicable to this case provides, in pertinent part:
(1) Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined, subject to the limitations of s. 440.12(2), as follows:
(a) If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. As used in this paragraph, the term "substantially the whole of 13 weeks" shall be deemed to mean and refer to a constructive period of 13 weeks as a whole, which shall be defined as a consecutive period of 91 days, and the term" during substantially the whole of 13 weeks" shall be deemed to mean during not less than 90 percent of the total customary full-time hours of employment within such period considered as a whole.
(b) If the injured employee has not worked in such employment during substantially the whole of 13 weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such 13 weeks shall be used in making the determination under the preceding paragraph.
. . . . .
(d) If any of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wages of the injured employee shall be used, except as otherwise provided in paragraph (e) or paragraph (f).
This statute is similar to the "commonest type of wage basis statute" discussed by Larson,[1] the first method using the injured employee's past earnings over some specified period immediately preceding the accident, a second method using the wages of a similar employee when the injured employee has not worked during substantially the whole of the specified period, and a "catchall" method aimed at determining a wage that "fairly and reasonably" represents the injured employee's earning capacity, applicable when the other statutory methods cannot "fairly and reasonably be applied." Larson states that the calculation of AWW "is not intended to *139 be automatic and rigidly arbitrary"[2] and that the test of the "fairness and reasonableness" of a method is plain: "Does it produce an honest approximation of claimant's probable future earning capacity?"[3] He notes that "there are almost an infinite number of variables that might figure in" the determination of AWW where use of the catchall method is indicated and that, "unspecific as this test is, it is much better than a technical test that methodically produces demonstrably inequitable results."[4]
The E/SA contend that Vegas controls this case and requires AWW based on concurrent employments to be calculated pursuant to the "simple, albeit arbitrary method" set out in the plain language of 440.14(1)(a), as opposed to the "equitable" approach urged by the claimant and adopted by the JCC. They assert that the method sanctioned by Vegas is to divide the total amount of wages earned in the concurrent employments during the thirteen weeks preceding the accident by thirteen, citing Quality Painting. In Vegas, the issue was not which part of section 440.14(1) applied to calculation of AWW in the case of concurrent earnings, but whether chapter 90-201, Laws of Florida, amending the definition of "wages" in section 440.02(24), affected the calculation of AWW under section 440.14(1). We held in that case that the amendment to the definition of "wages" in section 440.02(24) did not affect the calculation of Vegas' AWW under section 440.14(1), and further rejected the argument that chapter 90-201, Laws of Florida, overruled case law interpreting section 440.14(1). In a footnote, we noted the apparent confusion regarding the question of which subsection applied to calculation of AWW in the case of concurrent earnings, and observed that in Quality Painting this court had stated that "in cases of dissimilar concurrent employment section 440.14(1)(a) will apply, and the combined wages approach should be utilized, if the claimant has worked for the requisite 13 weeks in one of the employments." We did not hold in Vegas that AWW must be calculated using section 440.14(1)(a) whenever concurrent earnings were involved.
The claimant argues that the JCC properly construed section 440.14(1) in light of the purpose of the Workers' Compensation Act as noted in Trainer, that use of section 440.14(1)(a) under these circumstances is not mandated by any prior case law, and that the JCC exercised sound judicial discretion in establishing an AWW that fairly approximates his demonstrated pre-injury earning capacity. He asserts that concepts of fairness are inherent in the case law addressing AWW calculation, citing Christian v. Carolina Freight Carrier Corp., 571 So.2d 524 (Fla. 1st DCA 1990); Edwards v. Caulfield, 560 So.2d 364 (Fla. 1st DCA 1990); and Newell v. Seaboard Contractors, 473 So.2d 787 (Fla. 1st DCA 1985). He contends that section 440.14(1)(d) allows the JCC discretion to reach an AWW that fairly approximates the claimant's pre-injury full-time weekly wage earning capacity when the other statutory methods of determining AWW "cannot reasonably and fairly be applied." He asserts that the JCC's use of this method complies with Larson's explanation[5] as quoted in Vegas, 627 So.2d at 82:
The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.
Our survey of the Florida case law construing section 440.14(1) indicates that the *140 Industrial Relations Commission (Commission) and the courts have for the most part maintained a clear understanding not only of the legislative intent regarding AWW as a fair approximation of what the injured employee's earning capacity would be if no injury had occurred,[6] but also of the broad discretion vested by the legislature in workers' compensation adjudicators with respect to the particular method to be used to attain the intended result. However, there appears to be some confusion regarding which subsection of the statute should be applied to attain the "fair and reasonable" AWW intended by the legislature in circumstances similar to those of the instant case. Perhaps the best place to begin is with the decision of the Commission in Watson v. Merrill-Stevens Dry Dock & Repair Co., 1 FCR 355 (1956), a case cited in dicta in the supreme court's Trainer decision.
The claimant in Watson had worked for years as a sheet metal worker for W.L. Rives Company, frequently earning overtime. When this employer experienced a slack period during which the sheet metal workers were sometimes given less than 40 hours/ week employment, the claimant began working a second shift as a sheet metal worker with Merrill-Stevens. Three weeks after beginning this concurrent employment, he was injured on the job at Merrill-Stevens. His earnings at W.L. Rives for the eleven-week period before he began working two jobs averaged $118.55/week; his earnings at W.L. Rives during the 3-week period when he was working both jobs averaged $62/week. The deputy commissioner calculated his AWW by dividing his total earnings at W.L. Rives for the thirteen-week period prior to the accident by thirteen, and adding that figure ($100.96) to the 40 hour/week wage of a similar full-time employee at Merrill-Stevens ($87.60). The Commission accepted the E/C's contention that AWW in these circumstances should have been calculated by dividing the total wages the claimant earned in both jobs during the thirteen-week period by thirteen, noting that this would be
... a realistic representation of his average weekly wage for substantially full-time employment, i.e., employment "during substantially the whole of thirteen weeks" within the contemplation of Section 440.14(1), supra. Thus, resort to the "wages of a similar employee" or "the fulltime weekly wages of the injured employee" as provided in subsections (2) and (3) of said Section 440.14 is unnecessary and unauthorized since the method provided in subsection (1) thereof can "reasonably and fairly be applied" by treating the two related concurrent employments as one employment for the purpose of determining claimant's average weekly wage. ...
1 FCR at 357 (emphasis supplied). It appears to us that, under the peculiar circumstances presented in Watson, the method used by the Commission, averaging the earnings from the previous thirteen weeks of employment as if the concurrent employments constituted one employment, complied with the legislative purpose of section 440.14(1) to reasonably approximate the probable future earning capacity of the claimant if he had not been injured. However, the method used by the Commission does not appear to be the method contemplated by the legislature when it enacted the "13-week provision," now designated as section 440.14(1)(a). Having carefully examined the statutory scheme in its entirety, we are convinced that the method used by the Commission in Watson more correctly came under the legislature's catchall provision, authorizing determination of AWW based on the claimant's "full-time weekly wages," now designated as section 440.14(1)(d).
The plain language of section 440.14(1) indicates that the legislature intended each of the first three subsections to apply to specific fact situations. Subsection 440.14(1)(a) was intended to apply when the injured employee has been continuously employed full-time in the same employment for the thirteen weeks immediately preceding the industrial accident, whether for the same *141 employer or for successive employers. For example, it applies to a framing carpenter who worked full-time for the same contractor for substantially the whole of thirteen weeks prior to the accident, as well as to a framing carpenter who worked full-time for different contractors on successive construction sites during the thirteen-week period. It was not intended to apply, in any case, to concurrent employments, whether in similar or dissimilar work, whether full-time or part-time, or whether concurrent over the whole or part of the thirteen weeks immediately prior to the industrial accident. The AWW of an injured employee who was engaged in concurrent employments during any part of the thirteen week period was intended to be determined under section 440.14(1)(d). The method to be used in that determination depends upon the particular employment circumstances and was intended by the legislature to be determined by the JCC in the exercise of the discretion vested by section 440.14(1)(d).
Other Commission decisions indicate that it understood the legislature's intention to vest broad discretion in workers' compensation adjudicators with respect to the particular method to be used to attain a "fair and reasonable" AWW under the catchall provision when the other specific statutory methods are not applicable. See White's Superette v. Barnes, IRC Order No. 2-909, cert. den., 125 So.2d 875 (Fla.1960); Alexander v. Rolfe Armored Truck Service, 3 FCR 227, cert. den., Rolfe Armored Truck Service v. Alexander, 105 So.2d 927 (Fla. 3d DCA 1958); Wilson v. City of Haines City, 2 FCR 361, approved, 97 So.2d 208 (Fla. 2d DCA 1957).
In Jaquette Motor Co. v. Talley, 134 So.2d 238 (Fla.1961), the supreme court quoted the "reasonably and fairly" language of section 440.14(3), now designated section 440.14(1)(d), and noted that this section
... has been cited by the Industrial Commission as authority for combining for purposes of computing the average weekly wage the earnings of a claimant from two concurrent though dissimilar employments where the employments were both covered by the Workmen's Compensation Act. White's Superette v. Barnes, Claim No. 2-90874; cert. den. 125 So.2d 875. The basis of the White's Superette decision was that it was neither reasonable nor fair to compute the wage base of the employee solely upon his earnings from the employment out of which his injury transpired.
A decade later, in Trainer, the supreme court was confronted with the "frequently inequitable results" arising from application of an earlier decision disallowing combination of earnings from dissimilar concurrent employments for purposes of determining AWW, and held, prospectively, that "wages from concurrent employments shall be combined without regard to similarity of jobs." The claimant in Trainer had held concurrent but dissimilar part-time and full-time employment, and was injured at his part-time job two weeks after it began. The court remanded to the judge of industrial claims for a determination of AWW based on the claimant's "combined wages for the thirteen weeks preceding the accident," noting that it approved the method used in Watson and that the claimant in that case had also worked less that thirteen weeks in one of his jobs: "In that case the average weekly wage was stated to be one-thirteenth of the total amount of wages actually earned in both employments during the thirteen weeks immediately preceding the injury." The quote from Watson included in the court's Trainer decision includes the Commission's reference to section 440.14(1), now section 440.14(1)(a). There was no evidence in Trainer of the peculiar fact situation which made the method used in Watson "fair and reasonable." It is arguable that, in the absence of evidence that the claimant in Trainer did not intend to continue in the concurrent part-time employment, the AWW should have been determined based on "the full time weekly wages of the injured employee" pursuant to section 440.14(3), now section 440.14(1)(d), based on the wages he was actually earning at the time he was injured.
A comparison of this court's decisions in Quality Painting and K-Mart v. Jones, 502 So.2d 495 (Fla. 1st DCA 1987), reveals a similar confusion regarding which subsection of the statute should be applied to attain the "fair and reasonable" AWW intended by the *142 legislature in circumstances similar to those of the instant case. The latter decision read Trainer as applying the "full-time weekly wages" catchall provision, now designated as section 440.14(1)(d). The claimant in that case worked full-time at K-Mart and parttime at Sears. The court affirmed the deputy commissioner's method of determining AWW:
The deputy's ruling combining wages from both sources in determining claimant's average weekly wage is entirely consistent with the supreme court's construction of section 440.14(3), Florida Statutes (1969) [now § 440.14(1)(d), Fla. Stat. (1983)], in American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla.1972). Moreover, the deputy gave proper credit for subsequent wages earned at Sears, which increased substantially after claimant was unable to return to the more demanding work at K-Mart.
However, a year later, in Quality Painting, this court held that section 440.14(1)(a) was the proper method for calculating AWW where the concurrent employment is dissimilar, citing Trainer and Watson. It is arguable that this case presented another "peculiar circumstance" in which the method used in Watson would be considered "fair and reasonable," but we conclude that the method used in Quality Painting was contemplated by the legislature under section 440.14(1)(d), not section 440.14(1)(a). Our holding in Vegas that the 1990 amendment to the statutory definition of "wages" in section 440.02(24) did not affect calculation of AWW under section 440.14(1) was not limited to a particular subsection of that statute, but because Vegas referenced the method of calculation used in Quality Painting, we hereby clarify that the term "full-time weekly wages of the injured employee" in section 440.14(1)(d) is a term of art, the meaning of which was not altered by chapter 90-201, Laws of Florida.
In addition to those already cited in this opinion, other cases from this court demonstrate its understanding that the legislature intended exercise of the workers' compensation adjudicator's discretion under the catchall provision of section 440.14 to determine a "fair and reasonable" AWW. See Mauranssi v. Centerline Utilities Contract Co., 685 So.2d 66 (Fla. 1st DCA 1996); Jackson v. Hochadel Roofing Co., 657 So.2d 1266 (Fla. 1st DCA 1995); Blind v. It's a Bit Fishy, 639 So.2d 703 (Fla. 1st DCA 1994); Prestressed Decking Corp. v. Medrano, 556 So.2d 406 (Fla. 1st DCA 1990); Adart South Polybag Mfg. v. Goldberg, 495 So.2d 826 (Fla. 1st DCA 1986); Orange-Co of Florida v. Waldrop, 454 So.2d 724 (Fla. 1st DCA 1984); Lavin v. Alton Box Board Co., 431 So.2d 202 (Fla. 1st DCA 1983); Bruck v. Glen Johnson, Inc., 418 So.2d 1209 (Fla. 1st DCA 1982); Four Quarters Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981); Simpkins v. Watson, 397 So.2d 432 (Fla. 1st DCA 1981); Penuel v. Central Crane Service, 232 So.2d 739 (Fla.1970). In reviewing such a determination, this court must first consider whether section 440.14(1)(d) is applicable (i.e., whether any of the preceding subsections may "fairly and reasonably" be applied given the particular facts of the case), and then whether the JCC has properly exercised the discretion afforded by that section to determine an AWW that reflects "the full-time weekly wages of the injured employee."
We find that application of the method of calculation urged by the E/SA to the facts of this case would result in an AWW which would not fairly approximate the claimant's pre-injury earning capacity and use of which would therefore not properly reflect his probable future earning loss. Under the circumstances presented in this case, we find that the JCC properly exercised his discretion in calculating the claimant's AWW based on his actual full-time wages at the time he was injured, as authorized by section 440.14(1)(d) when the other methods "cannot reasonably and fairly be applied." The record indicates that the AWW determined by the JCC represents the claimant's true earning capacity if he had not been injured (i.e., he would have continued to work full-time for Wal-Mart and part-time for Krystal, at the wages indicated).
We AFFIRM the JCC's order, but certify to the Florida Supreme Court, as a matter of great public importance, the following question: *143 Whether American Uniform & Rental Service v. Trainer, 262 So.2d 193 (Fla. 1972), mandates use of section 440.14(1)(a), Florida Statutes, to determine average weekly wage in all cases where the claimant has worked in one employment for substantially the whole of thirteen weeks prior to the industrial accident, but has worked in a concurrent employment for only a portion of the thirteen-week period, by combining the total earnings in both employments and dividing by thirteen, or whether in such cases the legislature intended use of section 440.14(1)(d) to determine average weekly wage as a fair and reasonable approximation of "the full-time weekly wages of the injured employee."
ERVIN and DAVIS, JJ., concur.
NOTES
[1] 2 Larson, The Law of Workmen's Compensation, § 60.11(a), pp. 10-606 et seq. (1992).
[2] Id. at p. 10-638.
[3] Id. at p. 10-635.
[4] Id. at 10-641.
[5] 2 Larson, The Law of Workmen's Compensation, § 60.11(d), p. 10-564 (1986).
[6] In Witzky v. West Coast Duplicating & Claims Center, 503 So.2d 1327, 1329 (Fla. 1st DCA 1987), the court described AWW as "a method of establishing the value of an employee's lost ability to earn future wages during the period of disability attributable to the covered industrial accident."