864 So.2d 1132 (2003)
Gary C. JAMES, Sr., Appellant,
v.
ARMSTRONG WORLD INDUSTRIES, INC. and Specialty Risk Services, Inc., Appellees.
No. 1D02-2340.
District Court of Appeal of Florida, First District.
December 31, 2003.
Rehearing Denied January 30, 2004.
*1133 John L. Myrick, Pensacola, for Appellant.
Roderic G. Magie, Pensacola, for Appellees.
PER CURIAM.
The appellant, Gary C. James, Sr., appeals from an order of the Judge of Compensation Claims (JCC) which denied his request for an upward adjustment of the average weekly wage. We affirm.
The appellant was hired by the employer, Armstrong World Industries, Inc., in 1967 and worked until April 18, 2000. The appellant suffered a job-related injury on March 9, 1982. The appellant recalled missing work for approximately one month due to the injury, but he did not undergo surgery. He then returned to work in 1982 and continued working for the employer until April 17, 2000. On April 18, 2000, the appellant underwent lower back surgery related to the 1982 job injury. The appellant has not returned to work since the surgery, and the parties agree the claimant is permanently and totally disabled.
The issue before the JCC was whether the appellant's average weekly wage (AWW) should be calculated using the 13 weeks prior to the 1982 date of accident (which results in an AWW of $305.243, with a compensation rate of $203.49), or the 13 weeks prior to the surgery in 2000 (which results in an AWW of $638.73, with a compensation rate of $426.03). The JCC concluded the appropriate AWW was based on the 13 weeks prior to the appellant's accident in 1982.
Section 440.14, Florida Statutes (1982), provides in relevant part:
(1) Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined, subject to the limitations of s. 440.12(2), as follows:
(a) If the injured employee has worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of *1134 wages earned in such employment during the 13 weeks....
(b) If the injured employee has not worked in such employment during substantially the whole of 13 weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such 13 weeks shall be used in making the determination under the preceding paragraph.
(c) If an employee is a seasonal worker and the foregoing method cannot be fairly applied in determining the average weekly wage, then the employee may use, instead of the 13 weeks immediately preceding the injury, the calendar year or the 52 weeks immediately preceding the injury....
(d) If any of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wages of the injured employee shall be used, except as otherwise provided in paragraph (e) or paragraph (f).
(Emphasis added). "Injury" means "personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury." § 440.02(6), Fla. Stat. (1981).
Section 440.14(1)(d) is a "fall-back provision where none of the prior subsections apply." Expicare Nursing Services v. Eudaley, 596 So.2d 126, 129 (Fla. 1st DCA 1992). See also Taylor v. Certified Poultry & Egg Co., 651 So.2d 1262 (Fla. 1st DCA 1995). In Wal-Mart Stores v. Campbell, 714 So.2d 436 (Fla.1998), the claimant had worked at Wal-Mart for the 13 weeks immediately preceding the compensable accident, and had also worked part-time for another employer for six weeks immediately preceding the accident. The JCC calculated the AWW by dividing the total amount earned at Wal-Mart during the 13 weeks preceding the accident by 13. The JCC then modified the AWW by dividing the total amount the claimant earned at the part-time job by six and adding that figure to the original AWW. Wal-Mart argued the AWW should be calculated under section 440.14(1)(a) by dividing by 13 the total amount earned at both jobs during the 13-week period preceding the accident. On appeal, a panel of this Court affirmed the JCC's order, finding that the method of calculation urged by Wal-Mart "would result in an AWW which would not fairly approximate the claimant's pre-injury earning capacity and use of which would therefore not properly reflect his probable future earning loss." Wal-Mart Stores v. Campbell, 694 So.2d 136, 142 (Fla. 1st DCA 1997). The panel concluded the JCC properly exercised his discretion in calculating the AWW. A majority of the supreme court quashed the decision of this Court, determining that "section 440.14(1)(a), Florida Statutes, set forth the proper formula for use of a judge of compensation claims (JCC) in determining AWW in all cases where a claimant has worked in one employment for substantially the whole of 13 weeks prior to an industrial accident" and has worked in a concurrent employment for only a portion of the 13-week period. Wal-Mart Stores, 714 So.2d at 437. The majority stated:
We understand the concern the district court expressed in referring in its opinion to the statement in the Larson treatise that "the calculation of AWW `is not intended to be automatic and rigidly arbitrary,'" id. at 138-39 (quoting 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 60.11(d), at 10-638 (1997)). We agree that the goal of the calculation of the AWW is to determine a fair and reasonable AWW. Id. at 142. However, we also recognize the benefit of having a *1135 fixed method of calculation to apply in recurring situations so that employers, employees, and insurers can readily make the calculation without having to resort to a decision by a JCC. We believe that the legislature intended to provide such a fixed method of calculation for these concurrent employment situations and that the method provided determines a fair and reasonable AWW.
Id. at 438.
In the present case, the appellant had worked for the employer during substantially the whole of the 13-week period preceding the injury in 1982. That use of some other period would result in a higher compensation rate for a claimant does not compel a finding that the method in section 440.14(1)(a) cannot fairly and reasonably be applied.
In asserting that his "date of accident" should be April 18, 2000, because it is the date he became "disabled," the appellant relies on Hillsborough County School Board v. Christopher, 790 So.2d 1267 (Fla. 1st DCA 2001). The relevant portion of the decision in Christopher is as follows:
On cross-appeal, claimant argues that the JCC erred by directing that her PTD benefits be calculated based upon her average weekly wage (AWW) in effect on July 25, 1988, when she suffered her back injury, rather than on April 20, 1995, when she became disabled because her condition had deteriorated to the point that she could no longer work. We agree. See Cote v. Combustion Eng'g, Inc., 502 So.2d 500 (Fla. 1st DCA 1987) (the commencement of disability is the pertinent time for AWW determination); Reynolds v. Neisner Bros., Inc., 436 So.2d 1070 (Fla. 1st DCA 1983) (JCC erroneously calculated AWW at time of 1977 accident, rather than at time of disability in 1981). We therefore reverse and remand for recalculation of claimant's PTD benefits based upon the stipulated 1995 AWW.
The underlying facts in Christopher are not disclosed in the opinion. As the JCC below correctly noted in rejecting the appellant's argument, however, the statutory authority for computation of the AWW at a date after the accident is not stated in the decision and the panel relied on decisions involving repetitive trauma or occupational disease. As the JCC observed:
It is clear that in cases of occupational disease as defined in FS 440.151, the AWW is properly calculated using the "date of disability" as the "date of accident." The authority for this conclusion is found in the language of FS 440.151, as explained in Cote. The convergence of the analysis of occupational disease and repetitive trauma accidents is explained in Festa .... Each of these theories has separate and distinct burdens of proof for the parties, and each has potentially different results as between responsible employer/carriers. [citation omitted] However, the theories are similar to each other in the sense that the "injury" cause may be the result of repetitive trivial trauma or exposure. In that way, the development of repetitive trivial trauma has evolved from the exposure analysis.
Accordingly, the JCC correctly distinguished the present situation from that in Christopher. Although Judge Ervin in his dissenting opinion now discloses for the first time the facts involved in Christopher, Christopher recites the applicable method for computing AWW in occupational disease or repetitive trauma cases and nothing on the face of the Christopher decision clearly indicates that neither occupational disease nor repetitive trauma was involved.
AFFIRMED.
BARFIELD and ALLEN, JJ., concur; ERVIN, J., dissents with written opinion.
*1136 ERVIN, J., dissenting.
This workers' compensation case presents the question of whether the claimant's average weekly wage (AWW) should be calculated based on his wages at the time of his back injury on March 9, 1982, or at the significantly greater AWW in effect at the time claimant ultimately became disabled on April 18, 2000, due to the back condition. The majority, in affirming the order, approves use of claimant's 1982 wages and calculation of his AWW under section 440.14(1)(a), Florida Statutes (1981), and rejects claimant's argument that his AWW should have been calculated pursuant to section 440.14(1)(d). I cannot agree.
I am cognizant that section 440.14(1)(a) is generally the preferred method for calculating a claimant's AWW in a situation where the claimant worked during the 13 weeks immediately preceding the injury. See Wal-Mart Stores v. Campbell, 714 So.2d 436 (Fla.1998); Prestressed Decking Corp. v. Medrano, 556 So.2d 406 (Fla. 1st DCA 1989). I am also aware that section 440.14(1)(d) is most often used in AWW calculations when an injured worker has not worked substantially all of the 13 weeks preceding the injury and there is no similar employee to permit calculation under section 440.14(1)(b). See, e.g., Thomas-Johnston v. Publix Supermarkets, Inc., 721 So.2d 1235 (Fla. 1st DCA 1998); City of Hialeah v. Jimenez, 527 So.2d 936 (Fla. 1st DCA 1988). I cannot conceive, however, how anyone can logically conclude that it is reasonable and fair to compute claimant's AWW by utilizing his 1982 wages under subsection 440.14(1)(a).
As explained by the Florida Supreme Court, "the workmen's compensation law was intended to provide a direct, informal and inexpensive method of relieving society of the burden of caring for injured workmen and to place the responsibility on the industry served." Port Everglades Terminal Co. v. Canty, 120 So.2d 596, 602 (Fla.1960). Workers' compensation acts were "designed to remove from the workman himself the burden of his own injury and disability and place it on the industry which he served." Dennis v. Brown, 93 So.2d 584, 588 (Fla.1957). The act "was originally passed as administrative legislation to be simple, expeditious, and inexpensive so that the injured employee, his family, or society generally, would be relieved of the economic stress resulting from work-connected injuries, and place the burden on the industry which caused the injury." Lee Eng'g & Constr. Co. v. Fellows, 209 So.2d 454, 456 (Fla.1968). "[T]he law was designed to protect workers and their dependents against the hardships that arise from the workers' injury or death arising out of employment and occurring during employment, and to prevent those who depend on the workers' wages from becoming charges on the community. The law operates to place the burden for such misfortunes upon industry." McCoy v. Florida Power & Light Co., 87 So.2d 809, 810 (Fla.1956).
In determining an injured worker's AWW for compensation purposes, this court has frequently cited the following excerpt from Professor Larson's treatise:
"The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensation theory is *1137 necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis."
Vegas v. Globe Sec., 627 So.2d 76, 82 (Fla. 1st DCA 1993) (en banc) (quoting 2 Larson, The Law of Workmen's Compensation, § 60.11(d), at 10-564 (1986)). See also Witzky v. W. Coast Duplicating, 503 So.2d 1327, 1329 n. 1 (Fla. 1st DCA 1987). And see Wal-Mart Stores v. Campbell, 714 So.2d 436, 438 (Fla.1998) (agreeing "that the goal of the calculation of the AWW is to determine a fair and reasonable AWW").
What has occurred in this case is, as Professor Larson warned, the mechanical application of section 440.14(1)(a) in calculating claimant's AWW without any attempt to arrive at a fair approximation of his probable future earning capacity as a result of his disability. By accepting its use, the majority fails to recognize the purpose for which the Workers' Compensation Law was designed: to protect the worker and his or her family against hardships that arise from the compensable injury. Indeed, it frustrates as well the goal of protecting the worker and the worker's family from becoming charges on the community by placing the cost and burden associated with the injury on industry.[1] Moreover, its application ignores 18 years of continued toil by claimant, which benefited his employer, and reduces claimant's standard of living simply because he had the dedication and determination to continue to work despite the injury.
Workers' compensation law has long recognized that inequities may exist in AWW calculations. Observe, for example, the evolvement of the law in regard to the calculation of a worker's AWW when his or her income is derived from concurrent earnings. Initially, only concurrent earnings in similar employments could be considered; thereafter, all concurrent earnings, regardless of the similarity of the employment, were included in the calculation to achieve a fair approximation of claimant's probable future earning capacity. See J.J. Murphy & Son., Inc. v. Gibbs, 137 So.2d 553 (Fla.1962); American Uniform, & Rental Serv. v. Trainer, 262 So.2d 193 (Fla.1972). The purpose of the act, after all, "is to compensate for loss of wage earning capacity due to work-connected injury. It is the capacity of the `whole man' ... that is involved." Trainer, 262 So.2d at 194.
The above goal has similarly been recognized in repetitive trauma and exposure cases, which permit the date of disablement to be determined as the date of injury. See Tokyo House, Inc. v. Hsin Chu, 597 So.2d 348 (Fla. 1st DCA 1992); Food Machinery Corp. v. Shook, 425 So.2d 163 (Fla. 1st DCA 1983); Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980). Moreover, in occupational disease cases, AWW calculations are based on the date of "disablement," which is statutorily defined as the date of injury. See § 440.151(1)(a), Fla. Stat. (2002). And see Cote v. Combustion Eng'g, Inc. 502 So.2d 500 (Fla. 1st DCA 1987); Reynolds v. Neisner Bros., Inc., 436 So.2d 1070 (Fla. 1st DCA 1983). By thus defining the date of disablement in repetitive trauma and occupational disease cases, the law has ensured that a claimant's AWW will not be calculated unreasonably or unfairly by arbitrarily assigning *1138 the date of the first exposure or accident that gave rise to an injury, which may have occurred years before the claimant was even aware that he or she had suffered a disabling injury.
In my judgment, the same theory should apply in instances such as this, where a claimant is injured, but does not become disabled as a result of that injury until years later, and his or her earnings have significantly increased between the time of injury and disability. Applying section 440.14(1)(d) in such cases is not only consistent with the purpose of the Workers' Compensation Law,[2] but it is also consistent with the E/C's statutory duty to provide coverage. As stated in section 440.09(1), Florida Statutes (1981), "Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury arising out of and in the course of employment." (Emphasis added.) It is, after all, disability, i.e., the incapacity because of injury to earn wages, that is compensated under the Workers' Compensation Law through indemnity benefits. In fact, Hillsborough County School Board v. Christopher, 790 So.2d 1267 (Fla. 1st DCA 2001), which, like this case, involved an injury date occurring years before the resultant date of disability,[3] is a prime example of how section 440.14(1)(d) should be employed to ensure that a claimant receives a fair and reasonable approximation of his or her AWW.
Applying section 440.14(1)(d) in cases where the injury and resultant disability occur years apart and the claimant's earnings have significantly increased is not contrary to the legislative intent to have a standard method of computing AWW under subsection (1)(a). It simply recognizes and gives effect to the language in subsection (1)(d), which states that the employee's full-time weekly wages shall be used "[i]f any of the foregoing methods cannot reasonably and fairly be applied." The application of subsection (1)(d) is also a recognition of the ravages of inflation on the buying power of the dollar over an 18-year span. For example, the same goods and services purchased in 1982 with claimant's AWW of $305.24 required the expenditure of $544.69 in 2000.[4] Thus, if claimant's AWW is not adjusted to account for the effects of a declining dollar during such period, his earning capacity will have become substantially diminished. Consequently, because section 440.14(1)(a) does not produce an accurate approximation of claimant's probable future earning capacity, the fairness and reasonableness standard of section 440.14(1)(d) is not satisfied.[5] *1139 See 5 Arthur Larson, Larson's Workers' Compensation Law § 93.01[1][e], at 93-11 (2003) (stating that the test for fairness and reasonableness is plain: "Does it produce an honest approximation of claimant's probable future earning capacity?").
I therefore conclude that the JCC abused his discretion in determining claimant's AWW under section 440.14(1)(a) by using his 1982 wages, and would reverse and remand with directions to compute claimant's AWW under section 440.14(1)(d), based upon his 2000 wages.
NOTES
[1] Compare Edwards v. Caulfield, 560 So.2d 364, 374 n. 6 (Fla. 1st DCA 1990) (noting that the JCC could consider the claimant's status as a full-time worker in determining her AWW, because to do otherwise "would result in an AWW determination which is not truly representative of claimant's pre-injury earning capacity, and would violate the underlying purpose of the Act").
[2] It is also consistent with the legislative intent as currently stated in section 440.015, Florida Statutes (2002), which is "to assure the quick and efficient delivery of disability and medical benefits to an injured worker." (Emphasis added.)
[3] This court's records in Christopher, which this court may judicially notice, show that Christopher, who was employed as a janitor, injured her back in a compensable accident that occurred on July 25, 1988. Despite continuing pain, Christopher continued to work. Her condition, however, deteriorated and worsened over the succeeding seven years until April 25, 1995, when she could no longer work. Although Christopher had suffered a second industrial injury in 1995, which was manifested as carpal tunnel syndrome, the JCC found that Christopher was disabled in 1995 solely as a result of her 1988 back condition. This court agreed with Christopher's argument that her 1995 wages, which were significantly greater than her 1988 wages, should have been employed as the means of calculating her AWW.
[4] Federal Reserve Bank of Minnesota, Economic Research & Data, U.S. Consumer Price Index, at http://minneapolisfed.org/research/data/us/calc (Aug. 28, 2003).
[5] Although the JCC also found claimant to be disabled in 1982, there is no competent, substantial evidence to support such a finding. "Disability" is the "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." § 440.02(9), Fla. Stat. (1981). While claimant may have had temporary periods of disability, the undisputed facts are that he continued to work for nearly 18 years after his 1982 injury and he made more in wages than he had previously earned. Thus, it cannot be said claimant was disabled from 1982.