ERVIN, J.,
dissenting.
I respectfully dissent. In order to explain my position adequately, I set out additional facts to those given in the majority opinion. As reflected in the parties’ agreement, following the occurrence of claimant’s compensable back injury in 1987, the employer administratively accepted claimant as permanently, totally disabled (PTD) in May 1993. Claimant technically remained an employee, however, and until his separation from employment in 2004, the E/C continued to pay all or part of his group health-insurance premium, when his insurance was terminated. After his separation from employment, Publix adjusted the average weekly wage (AWW) by including in it the value of the premium as of the time of the injury.
In denying claimant’s petition for benefits seeking an adjustment to the AWW by including in it the increased value of the insurance premium as of the time of termination, the JCC concluded that the valuation date was controlled by section 440.14(1), Florida Statutes (1987), which provided that the AWW shall be based on wages in existence “at the time of the injury.” And, because it appeared that claimant had worked with the employer for a period of thirteen weeks prior to the date of the accident, no other date could be applied. In so concluding, the JCC overlooked pertinent statutory provisions in both section 440.14 and other provisions in chapter 440 applicable when claimant was injured and afterward. In my judgment, an in pari materia construction of all related statutes is essential in order to reach an appropriate determination of the legislative intent regarding the date of valuation of a fringe benefit.
Section 440.14(1), governing determination of pay, provides in part: “Except as otherwise provided in this chapter, the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation-” (Emphasis added.) The JCC, as stated, used the 13-week *1258 period preceding the injury, as provided in subsection (l)(a) for computing AWW. The reason for the exclusion of the health-insurance premium was that section 440.14(3) then provided: “If, during the period of disability, the employer continues to provide consideration, ... the value of such consideration shall be deducted when calculating the average weekly wage of the employee so long as these benefits continue to be provided.”
Claimant argues that because the value of the employer’s contribution to claimant’s health insurance cannot be included in the wage calculation until the time the employment and the health-insurance benefits were discontinued, its value should be calculated as of the date the contribution ended. The E/C responds by relying on case law holding that the AWW should be determined as of the date of injury, not the date when claimant’s employment terminated. See, e.g., Flowers v. Acousti Eng’g Co. of Fla., 888 So.2d 735 (Fla. 1st DCA 2004); James v. Armstrong World Indus., Inc., 864 So.2d 1132 (Fla. 1st DCA 2003); Karnes v. City of Boca Raton, 858 So.2d 1264 (Fla. 1st DCA 2003). In each of the cited cases, this court directed the claimant’s AWW to be ascertained based on the wages earned the 13 weeks preceding injury, rather than on wages earned when the respective claimants were determined to be PTD and their employment ended. The claimant in each case continued to work for the same employer for a substantial period of time from the date of the injury until becoming PTD. As a result, each employee’s wages were considerably higher at the end of employment than at the date of the injury.
In my judgment, the employer’s reliance on the above case law is not persuasive. Although, as in the present case, a lengthy span in time transpired from the date of the accident until each of the claimants’ employment ended, none of the cases involved, as here, the question of when the value of a fringe benefit should be included in an AWW. Those cases appear to be influenced by the supreme court’s decision in Wal-Mart Stores v. Campbell, 714 So.2d 436, 437 (Fla.1998), in which the court concluded that the JCC should apply section 440.14(1)(a) even when the claimant has worked in concurrent employment less than 13 weeks before the injury.[1]
The concern expressed in Wal-Mart as to the inconsistent application of a worker’s AWW if the statutory formula were not followed has no application to a case such as this in which an ambiguously worded statute in existence at the time of the claimant’s injury made no provision for the inclusion of a fringe benefit in a worker’s AWW, and in fact permitted the employer to deduct the value of the benefit. Moreover, the statute was altogether silent as to the time when the AWW should be adjusted by adding the fringe benefit, despite the fact that the definition of wages included employer benefits, such as health insurance. § 440.02(21), Fla. Stat. (1987).
Recognizing that section 440.14 did not address the manner in which a formerly excluded fringe benefit should be included in the AWW calculation, the legislature amended section 440.14 in 1989, by adding subsection (4), directing the employer, upon the worker’s termination from employment, or the termination of the previously provided benefit, to file a corrected wage statement including a fringe benefit, previously deducted from the worker’s AWW during his or her employment, in the AWW. The following year, thé legislature amended the definition of wages by adding the provision stating that “if employer contributions for housing or health insurance are continued after the time of the injury, the contributions are not *1259 ‘wages’ for the purpose of calculating an employee’s average weekly wage.” § 440.02(24), Fla. Stat. (Supp.1990). These changes, in my opinion, reasonably reflect the legislature’s acknowledgment that the value of the benefit would have increased from the time of the worker’s injury until the time of his or her separation from employment.[2]
Furthermore, I conclude that the changes clarify the legislative intent concerning the time when the valuation of a fringe benefit should be determined, and, as such, they should properly be considered remedial statutes, e.g., statutes relating to remedies or modes of procedure that do not create or take away vested rights, but only operate in confirmation of rights already existing. Because of their effect, they do not fall within the general rule proscribing the retrospective operation of statutes. See State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995); Rustic Lodge v. Escobar, 729 So.2d 1014 (Fla. 1st DCA 1999); City of N. Bay Village v. City of Miami Beach, 365 So.2d 389 (Fla. 3d DCA 1978).
Upon consideration of all of the statutes determining pay and defining wages, enacted before and after claimant’s industrial injury, I am of the opinion they were designed to express the legislative purpose that a fringe benefit provided to an employee while he or she was receiving indemnity benefits and continued to be employed by the employer becomes a benefit for inclusion in the AWW at the time the employer’s contribution ends; therefore it is the value of the benefit upon the occurrence of such date that controls the calculation of the worker’s AWW.

. See discussion of Wal-Mart in James, 864 So.2d at 1134-35.

. Indeed, this view is bolstered by my review of section 440.15(1)(e)1, Florida Statutes (1993), the statute in effect when claimant was accepted as PTD, which displays the legislative intent that the calculation of a worker's weekly wages should be increased during the time he or she remains PTD by providing for "additional weekly compensation benefits equal to 5 percent of his weekly compensation rate, as established pursuant to the law in effect on the date of his injury, multiplied by the number of calendar years since the date of injury.”